[No. B030332. Second Dist., Div. Five. Aug. 16, 1988.]

JOSEPH B. LAWRENCE, Plaintiff and Appellant, v.
WESTERN MUTUAL INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Gage, Mazursky, Schwartz, Angelo & Kussman, Steven B. Stevens and Jeffrey Ehrlich for Plaintiff and Appellant.

Knapp, Petersen & Clarke, Barry Bartholomew and Kathryn A. Albarian for Defendant and Respondent.

**OPINION**

**BOREN, J.**—Joseph B. Lawrence appeals after summary judgment was granted in favor of Western Mutual Insurance Company (Western Mutual). We find that summary judgment was properly granted because Lawrence's claim under his all-risk homeowner's insurance policy for losses incurred as a result of earth subsidence was barred by the policy's contractual one-year limitation on the filing of an action and the sixty-day notice of loss requirement. Accordingly, we affirm.

FACTS

Because the matter arises on summary judgment for respondent, we recite the record accepting as true the factual assertions in appellant's declarations and drawing all permissible inferences in appellant's favor in accordance with the customary rule of appellate review. (*Zurn Engineers* v. *Eagle Star Ins. Co.* (1976) 61 Cal.App.3d 493, 495 [132 Cal.Rptr. 206].)

Lawrence purchased a lot in the Bel Air area of Los Angeles County in 1968 and then constructed a home on the site. In 1974 and 1975, earth settlement, which had previously not been a problem, damaged the house and prompted Lawrence to retain a soil engineer to assess the problem. The engineer determined that the settling was caused by faulty drainage on the lot and recommended a drainage system which Lawrence thereafter had installed in 1975.

Lawrence had no further problems on his lot with earth settlement or movement until 1983. After heavy winter rains, the western portion of his house settled with the foundation tilting to "a substantial magnitude" and causing extensive interior and exterior damage. In the opinion of a geotechnical engineer with expertise in soil mechanics and foundation design, a prior report in December of 1983 from Pacific Materials Laboratories reflected test borings on the property which indicated that the western portion of Lawrence's home was built on up to 36 feet of fill which had not been properly compacted to industry standards or to the standards set by the City of Los Angeles. The inadequate compaction of the deep fill beneath Lawrence's home had caused the damage to the home in 1983. The 1975 earth settlement had occurred in a localized area and had resulted in a small depression forming under the dining area of the house. This localized depression in 1975 was, in the engineer's opinion, simply the result of poor drainage and "not related to" the extensive damage in 1983 and "not consistent with the settlement of deep fill which would have caused a tilting of the entire structure downward as the fill compressed."

In late 1983 and early 1984, Lawrence incurred expenses of approximately $250,000 for geological studies and analyses and the design and installation of a foundation support system to support the house and to prevent further damage from earth movement. Nineteen steel caissons were set in the soil and anchored in bedrock, and the house was then lifted back to a level position and anchored to the caissons and grade beams.

Sometime between mid-1983 and early 1984, Lawrence read the terms of the all-risk homeowner's insurance policy which was issued by Western Mutual and was in effect from November 18, 1981, through November 17, 1983. The terms of the policy required, in pertinent part, that the insured "give written notice to the company of any loss without unnecessary delay . . . and within 60 days after the loss . . . the insured shall render to this company a proof of loss, signed and sworn to by the insured . . ." and that any lawsuit on the policy be "commenced within 12 months next after inception of the loss." The policy also contained provisions which excluded recovery for damages "[c]aused by, resulting from, contributed to or aggravated by" either "[w]ater below the surface of the ground" or "any earth movement, including but not limited to . . . earth sinking, rising or shifting . . . ."

After reading the policy, Lawrence concluded that the damages caused by the earth movement were excluded from coverage under his insurance policy and did not make any claim to Western Mutual for the damages. Indeed, as subsequently indicated by a senior vice-president at Western

Mutual, the insurer expected a policyholder to forego filing a claim for a loss due to earth movement.

In July of 1985, Lawrence was discussing an unrelated matter with his attorney and happened to mention the problems he had encountered with his house. ■ ■■ ■■ ■ The attorney reviewed Lawrence's insurance policy and advised him that if the cause of the settling was the negligence of a third party, then the loss may be covered under the policy even though the damages resulted from earth movement, which is otherwise excluded from coverage in the policy.[1] The terms of the insurance policy, however, did not advise the insured of this legal theory of possible recovery for loss from earth movement. The attorney reviewed the report in December of 1983 from Pacific Material Laboratories, spoke to the soil engineer who had most recently worked on the property and to other engineers, and then informed Lawrence that the cause of the house settling was the improper and negligent compaction of the fill under the house.

On July 15, 1985, Lawrence filed a claim for the loss he had sustained. On January 7, 1986, Western Mutual refused to indemnify Lawrence and denied coverage under the policy, noting, in part, (1) that the soil subsidence had existed prior to the effective date of the insurance coverage, (2) that the claim was presented after all the repairs, rebuilding and refurbishing had been completed without any opportunity to investigate the claim of loss beforehand, (3) that timely notice of the loss had not been given, and (4) that the policy, incorporating Insurance Code section 2071,[2] bars any suit or action for the recovery of any claim unless commenced within 12 months after the inception of the loss.

On January 28, 1986, Lawrence filed this lawsuit. Thereafter, the trial court granted Western Mutual's motion for summary judgment on the ground that the suit was barred by the contractual one-year limitation on

---

[1] It is well settled that an all-risk insurance policy provides coverage for negligently caused damage unless specifically excluded, and that if there is a concurrence of different causes of the loss, the cause which sets the others in motion and is the efficient proximate cause is the cause to which the loss is attributed. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 102-105 [109 Cal.Rptr. 811, 514 P.2d 123]; *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 31-32 [27 Cal.Rptr. 689, 377 P.2d 889]; *Premier Ins. Co.* v. *Welch* (1983) 140 Cal.App.3d 720, 724 [189 Cal.Rptr. 657]; *Sauer* v. *General Ins. Co.* (1964) 225 Cal.App.2d 275, 278 [37 Cal.Rptr. 303].)

[2] Insurance Code section 2070 requires that all policies contain certain minimum standard provisions which include, pursuant to section 2071, that "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss." Lawrence's policy contained this provision, worded exactly as noted above and as stated in section 2071.

the filing of an action, and the court granted and entered judgment for Western Mutual. Lawrence appeals.

## DISCUSSION

### I

■ To justify granting a motion for summary judgment, a defendant " 'must conclusively negate a necessary element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial.' [*Saatzer* v. *Smith* (1981) 122 Cal.App.3d 512, 517 (176 Cal.Rptr. 68).] The party opposing the summary judgment, which is supported by declarations or affidavits sufficient to sustain the motion, has the burden of showing that triable issues of fact do exist. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) If that burden is not sustained, summary judgment is proper. (*Saatzer* v. *Smith, supra,* 122 Cal.App.3d at p. 517.)" (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 459 [202 Cal.Rptr. 222].) Strictly construing the affidavits and declarations of the moving party and liberally construing those of the opposing party (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573 [142 Cal.Rptr. 716]) and making our own independent determination of the law (*Durbin* v. *Fletcher* (1985) 165 Cal.App.3d 334, 341 [211 Cal.Rptr. 483]; *Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744]), the record here satisfies the requirement that as a matter of law, Lawrence's suit against Western Mutual cannot prevail (see *Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 446 [213 Cal.Rptr. 314]).

### II

■ At the heart of this appeal is the contractual one-year limitation on the filing of a lawsuit. Such a policy provision requiring that an action be commenced within 12 months after the inception of the loss has been repeatedly upheld as a reasonable limitation which manifests no undue advantage and no unfairness as to the period of time. (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 753 [117 P.2d 669]; *C & H Foods Co.* v. *Hartford Insurance Co.* (1984) 163 Cal.App.3d 1055, 1064 [211 Cal.Rptr. 765].)

The critical question is the meaning of the phrase "inception of the loss" in the provision that an action be "commenced within 12 months next after inception of the loss." Appellant urges that the "inception of the loss" is the point not when the damage is discovered, but rather when the insured knew

or should have known that a loss has occurred which is covered by his insurance policy.

Contrary to appellant's assertion, *Zurn Engineers* v. *Eagle Star Ins. Co., supra,* 61 Cal.App.3d 493, does not support the conclusion that the "inception of the loss" is the point at which the policyholder is or should be aware of an *insured* loss. In *Zurn,* a contractor and the city which had hired the contractor disputed the responsibility for broken pipelines in a plant the contractor was constructing for the city. After extended discussions between the parties and over a year after the damage had been discovered, the city notified the contractor of its position that the contractor was liable for the damage. The contractor then filed a statement of loss with its insurer, who denied coverage and obtained summary judgment based on the one-year limitation on the filing of a lawsuit which was incorporated in the insurance policy. On appeal, the judgment was reversed with the court concluding that the inception of the loss does "not mean the time at which the physical event causing the damage to property occurred. Rather, it must be construed as occurring no earlier than the point at which the insured's reasonable belief of the third party's responsibility for the loss by reason of an uninsured cause is countered by the third party's assertion that it is not responsible." (*Id.* at p. 495.) In the present situation, however, there was no reasonable dispute with a third party regarding liability which delayed the filing of an insurance claim.

Moreover, although in interpreting the inception of the loss, *Zurn* rejected the approach in some jurisdictions of a "very strict construction holding that it is the occurrence of the physical event causing the loss" (*id.* at p. 498) and approved of the "more liberal interpretation [in other jurisdictions of the] accrual of a cause of action against the insurer" (*id.* at p. 499), even such a liberal construction misses the mark as to appellant's situation. Lawrence's cause of action against Western Mutual *accrued* no later than December of 1983, after the house had been damaged and Lawrence knew or should have known from the report of Pacific Materials Laboratories that the lot on which his home was built had not been properly compacted according to industry and city standards and from which he could have surmised that his loss was due to the negligence of a third party.[3] The date of the "inception of the loss," even under the more liberal interpretation favored in *Zurn,* was thus no later than December of 1983, which was still more than one year before Lawrence filed his lawsuit.

---

[3] Lawrence's claim that the report from Pacific Materials Laboratories was "highly technical and virtually unintelligible to me" does not relieve him of being charged with knowledge of its significance. It is not unreasonable to conclude that Lawrence could easily have ascertained the practical meaning of the report from the engineer who prepared it at Lawrence's request and expense.

## III

The so-called "discovery rule" does not apply to render the date of the "inception of the loss" the date in July of 1985 when Lawrence learned from his attorney that the loss might be covered by his insurance policy under principles of concurrent proximate causation. ■ With a legislatively enacted statute of limitations, "It is the occurrence of some . . . cognizable event rather than knowledge of its legal significance that starts the running of the statute of limitations." (*McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 804 [159 Cal.Rptr. 86].) ■ The contractual one-year commencement of suit provision contained in Lawrence's policy pursuant to Insurance Code section 2071 should function no differently in that regard. It is as irrelevant to the one-year commencement of suit provision as it is to the accrual of a cause of action "that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action." (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 898 [218 Cal.Rptr. 313, 705 P.2d 886].)

If the argument advanced by Lawrence were accepted, the practical effect would be to nullify the contractual one-year commencement of suit provisions. "Any plaintiff could simply allege ignorance of his or her legal rights against a particular defendant. This is not difficult. Most people do not know the legal answers to questions arising from certain circumstances." (*McGee* v. *Weinberg, supra,* 97 Cal.App.3d at p. 804.) Accordingly, any specialized knowledge Lawrence needed to interpret the factual cause of the damage to his house was provided by the report he received in December of 1983, and the commencement of suit provision was not tolled beyond that date.

## IV

■ Nor is Western Mutual equitably estopped to assert the one-year commencement of suit provision because of either fraudulent concealment by the insurer as a fiduciary or intentional misrepresentation which misled the policyholder. In an appropriate case, as where the insured was sent only a detailed summary of the policy which was deemed the functional equivalent to the policy and which omitted the one-year commencement of suit provision, equitable estoppel has been held to apply. (*Elliano* v. *Assurance Co. of America* (1970) 3 Cal.App.3d 446, 450-452 [83 Cal.Rptr. 509].) However, Lawrence urges the application of the estoppel doctrine because the policy issued to him excluded coverage for any damage from earth movement but failed to advise the policyholder that if the negligence of a third party was a concurrent proximate cause of the damage, the loss may be covered under the all-risk policy, as indicated by the previously noted well-settled case law on the matter.

■ An insurer is under no obligation to explain to the insured all possible legal theories of recovery. Nonetheless, the terms of an insurance policy must fairly and accurately explain the covered risks.[4] ■ However, we need not determine whether the explanation of the covered risks was here, as appellant urges, so inaccurate and unfair as to amount to fraudulent concealment or misrepresentation sufficient to justify the application of the doctrine of estoppel.

Lawrence first noticed the loss after heavy rains "in the winter of 1982-83" but admits that he did not read his insurance policy until "[s]ometime between mid-1983 and early 1984." Accordingly, by virtue of the time periods involved, Lawrence does not sufficiently allege that his reading of the insurance policy was the factor upon which he relied to cause him to refrain from initiating a timely suit within the one-year period for filing an action. In any event, and in breach of a related provision in the insurance policy, Lawrence also failed to give notice to the insurer of his loss within 60 days after the loss, which was well before he read the policy.

Western Mutual was also apparently prejudiced by Lawrence's delay. It denied coverage under the policy in part because the claim was presented after all repairs, rebuilding and refurbishing had been completed and before there was any opportunity to investigate the claim. Although Western Mutual also denied coverage because it believed there was a so-called prior loss in progress, it still might well have factually investigated the matter if the passage of time had not deprived it of the ability to do so.

Under the circumstances, Lawrence's failure to make a timely claim or to file suit within one year of the loss was to Western Mutual's detriment and could not have resulted from any misrepresentation by Western Mutual. Accordingly, the insurer cannot be estopped to assert Lawrence's failure to sufficiently satisfy the requirements that he make a timely claim and file suit within the requisite one-year period.

V

■ Finally, the one-year commencement of suit provision also precludes Lawrence from recovery on the cause of action for alleged tortious bad faith

---

[4] We note that by simply stating so in the policy, an insurer may specifically exclude coverage for any otherwise covered cause of loss when it is concurrent with an excluded cause. Similarly, it may be advisable for an insurer who does not exclude coverage for losses from such concurrent causes to specifically indicate so in the policy. The policy issued to appellant could have directly, rather than indirectly and by unstated assumptions concerning the law, explained to the average reader the covered risks regarding concurrent proximate causes of loss.

in handling his claim because of purported misrepresentations in the policy concerning coverage. Claims arising out of the contractual relationship are subject to the contractual limitations period contained in the insurance policy. However, Lawrence alleges that, as here, a tort claim which arises out of the contractual relationship but is not a claim on the policy is not subject to the limitations period contained in the policy. (See *Frazier* v. *Metropolitan Life. Ins. Co.* (1985) 169 Cal.App.3d 90, 104 [214 Cal.Rptr. 883]; *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 48-49 [147 Cal.Rptr. 565].) Appellant's reliance upon *Murphy* and *Frazier* is misplaced.

In *Murphy,* the insured did not seek to hold the insurer on its policy but sought compensation for the damages caused by the insurer's conduct after the loss had occurred and damages thereafter ensued when contractors performed repairs on the insured's home in an unsatisfactory and unworkmanlike manner. (*Murphy, supra,* 83 Cal.App.3d at pp. 49-50; see *C & H Foods Co.* v. *Hartford Ins. Co., supra,* 163 Cal.App.3d 1055, 1067.) In *Frazier,* a wife's breach of contract claim for the failure to pay double indemnity beyond the basic benefit on her husband's life insurance policy was barred by the contractual limitations period; but her cause of action for a bad faith denial of her claim of double indemnity on the policy was not barred because that cause of action did not arise until after the insurer denied the claim, and her complaint was filed within the requisite period of time after the denial. (*Frazier, supra,* 169 Cal.App.3d at p. 103.)

In contrast, Lawrence's allegation of tortious bad faith relates to the complete denial of the claim on the underlying policy. In both *Murphy* and *Frazier,* a subsequent event occurred after the initial policy coverage was triggered which was the basis for the cause of action. The subsequent event related to the policy, but either was not a claim directly on the policy (*Murphy*) or was a claim which arose after the insurer paid on the policy but did so not to the satisfaction of the beneficiary of the policy (*Frazier*). Here, Lawrence's cause of action for bad faith in purportedly misrepresenting the scope of coverage in the policy is fundamentally a claim on the policy and is thus time barred.

## Disposition

The judgment is affirmed. Each side is to bear its own costs on appeal.

Ashby, Acting P. J., and Kennard, J., concurred.