[No. B045657. Second Dist., Div. Two. Nov. 30, 1990.]

JOSE PRIETO et al., Plaintiffs and Appellants, v.
STATE FARM FIRE AND CASUALTY COMPANY et al.,
Defendants and Respondents.

COUNSEL

Thon & Beck and Karl W. Schoth for Plaintiffs and Appellants.

Wolf & Leo, Jeffrey H. Leo, Lynda B. Goldman, Horvitz & Levy, Peter Abrahams and Douglas G. Benedon for Defendants and Respondents.

OPINION

**FUKUTO, J.**—Jose and Elizabeth Prieto appeal from the order dismissing their insurance bad faith and intentional infliction of emotional distress action against State Farm Fire and Casualty Company and its investigator after the trial court sustained demurrers to the second amended complaint without leave to amend. We agree with the trial court that plaintiffs' action is governed by the one-year statutory limitation for suits on fire insurance policies. However, in light of a recent Supreme Court decision concerning application of that statute, the order of dismissal must be reversed, to allow plaintiffs to amend to show, if they can, that their action is not barred.

FACTS

This action was filed April 5, 1988. Plaintiffs' primary cause of action was against State Farm, for breach of the implied covenant of good faith and fair dealing. In their second amended complaint, plaintiffs alleged State Farm insured their business premises in Whittier, known as "La Casita del Pollo." On July 13, 1986, the business was destroyed by a fire. Plaintiffs complied with the conditions of their policy and demanded benefits under it. On April 6, 1987, a day less than a year before suit was commenced, State Farm mailed plaintiffs a letter refusing to pay any sums under the policy, "on the

sole ground that plaintiffs planned, staged, and intentionally set the fire of July 13, 1986 . . . ." State Farm did so notwithstanding its actual or constructive knowledge that plaintiffs did not intentionally set the fire, which was caused by grease that continued burning, due to a faulty gas valve, even though sprinklers functioned. Plaintiffs in fact attempted to extinguish the blaze and summoned the fire department. State Farm also knew or should have known that plaintiffs were exonerated by the fire department from any intentional involvement in the fire and were never criminally charged for it.

Plaintiffs alleged that despite its knowledge, State Farm refused and continues to refuse "to pay any benefits or sums under the policy," and that this refusal violates the implied covenant of good faith and fair dealing, for various factual and legal reasons (set forth in fn. 1).[1] As a result, plaintiffs have suffered losses "including indebtedness, loss of business income, inventory, fixtures, and assets, emotional distress, attorney's fees, loss of credit, and severe family discord." Plaintiffs also claimed entitlement to punitive damages.

A second cause of action, for intentional infliction of emotional distress, was asserted against both State Farm and codefendant Southern California Insurance Service Investigations, Inc. (ISI), which allegedly conducted an investigation leading to State Farm's conclusions about the fire. In this cause of action, plaintiffs incorporated by reference the allegations of the first cause, and alleged that all defendants instigated or ratified State Farm's conduct, and knew or should have known that it "would create the distinct probability of causing emotional distress to plaintiffs." Nonetheless, in disregard of this probability, State Farm denied coverage, and plaintiffs thereby suffered severe emotional distress, embarrassment, and loss of reputation, by dint of the charge of arson, the resulting financial loss, and "the collapse of [plaintiffs'] business." Plaintiffs again prayed punitive damages.

State Farm and ISI both demurred generally to this complaint.[2] State Farm's demurrer was based principally on the one-year limitation period

---

[1] Plaintiffs alleged the refusal to pay "a) Has no reasonable basis; [¶] b) Outrageously violates said defendants' [State Farm and Does 1-25] fiduciary duties to primarily act with plaintiffs' best interests in mind in fulfilling said defendants' obligations and rights under the policy; [¶] c) Constitutes reckless disregard for plaintiffs' rights under the policy for a fair and complete investigation of the fire that destroyed plaintiffs' business; and [¶] d) Constitutes an outrageous design in reckless disregard of plaintiffs' rights to maliciously oppress, vex, and harass plaintiffs in that said defendants were aware of the facts alleged in paragraph 8 herein prior to the time of denial of coverage to plaintiffs under the policy."

[2] The complaint also contained a third cause of action, for libel and slander. In their response to defendants' demurrers, plaintiffs requested dismissal of that cause, and the trial court so ordered. The third cause is thus not at issue on this appeal.

for actions on fire insurance policies, prescribed by Insurance Code section 2071. The trial court agreed that this section barred the action. The court accordingly sustained the demurrers without leave to amend and dismissed.[3]

## Discussion

Section 2071 of the Insurance Code prescribes as part of the standard form for fire insurance policies in California the following limitation of action: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss." Plaintiffs do not dispute that this limitation applies to their policy with State Farm, to the extent of the clause's legal reach. Primarily at issue is whether the provision applies to plaintiffs' "bad faith" and emotional distress causes of action, commenced more than 12 months after the fire that initiated plaintiffs' loss.

Here as below, defendants adduce several recent cases strongly indicating that plaintiffs' pleaded claims must be considered "on the policy" and hence covered by section 2071. In *Lawrence v. Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 [251 Cal.Rptr. 319], Division Five of this court dealt with an action for homeowners policy benefits and bad faith. The damage began and was discovered sometime before 1983, but the plaintiff did not present a claim until 1985, after receiving legal advice that the policy might cover his loss. Suit was filed three weeks after the insurer denied coverage, based in part on the provisions of section 2071, which appeared in the policy.

Affirming a summary judgment on grounds of this limitation, the court first reiterated that the 12-month period under section 2071 was and is fair and enforceable. (204 Cal.App.3d at p. 571.) The court then held that "inception of the loss," as provided therein, occurs at the time of the damage or of its discovery, not when the plaintiff later becomes aware of his legal rights. (*Id.* at pp. 571-573.) This meant that plaintiff's claim for recovery under his policy was time-barred. It also meant that the additional tortious bad faith claim, alleging misrepresentations in the policy, was

---

[3] ISI's demurrer relied primarily on plaintiffs' failure to allege facts sufficient to charge ISI with State Farm's behavior and the resulting emotional distress. (Cf. *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44-47 [260 Cal.Rptr. 183, 775 P.2d 508].) In the trial court, plaintiffs' response to this argument was in the nature of a demurrer to it. On appeal, plaintiffs address only the asserted statute of limitations deficiency of their complaint. We accordingly confine our analysis to that question.

barred as well: it "relate[d] to the complete denial of the claim on the underlying policy," and was "fundamentally a claim on the policy . . . ." (*Id.* at p. 575.)

The same result obtained on similar facts in *Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 [252 Cal.Rptr. 565]. There, the court affirmed a demurrer based on the section 2071 limitation where the pleaded facts showed the loss occurred and was discovered well more than a year before suit. The court further held the plaintiff's concurrent causes of action for bad faith and unfair insurance practices were as vulnerable under the limitation as his breach of contract claim. The court rejected plaintiff's argument that these causes were not "on the policy," because plaintiff sought by them to recover essentially the same damages. The bad faith and related claims thus were "a transparent attempt to recover *on the policy* . . . ." (205 Cal.App.3d at p. 536.)

*Lawrence* and *Abari* were recently followed in *Magnolia Square Home-owners Assn.* v. *Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1063 [271 Cal.Rptr. 1]. Affirming a declaratory judgment that an insurer had no duty to indemnify because the section 2071 policy limitation had expired before suit, the court also affirmed dismissal of the insured's cross-complaint for bad faith and breach of fiduciary and statutory duties. The court found these causes to be subject to section 2071, because "the essence of those claims is an attempt to recover '[d]amages for failure to provide benefits under subject contract of insurance.'"

In opposition to these authorities, plaintiffs rely on two antecedent cases. One of them is plainly distinguishable, factually and legally. In *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 [147 Cal.Rptr. 565], the plaintiffs sued their fire insurer for bad faith, intentional infliction of emotional distress, and fraud, arising out of the insurer's provision of unskilled and unlicensed personnel to repair fire damage, and a subsequent attempt to minimize the amounts payable to plaintiffs and divert them to the unlicensed contractors. The court declined to apply section 2071's limitation to the bad faith cause of action because the alleged breaches of covenant derived from activities "long after the fire loss and related to the repair and restoration of plaintiffs' home and personal property and the employment of persons and firms to do that work, the institution and prosecution of the interpleader action." (83 Cal.App.3d at p. 49.) In short, although the claims arose out of the contractual relationship, the damages were not attributable to a risk covered by the policy, and hence the action was not one "on the policy." (*Ibid.*) For the same reasons, section 2071 did not bar the emotional distress claim based upon the same facts. (*Id.* at p. 50.)

On its overall facts and on those that were legally dispositive, the *Murphy* case is distinct from the present one, and it provides no direct support for plaintiffs' position. The distinction was noted in the *Lawrence* and *Abari* cases, *supra*. As *Lawrence* stated, in *Murphy* "a subsequent event occurred after the initial policy coverage was triggered which was the basis for the cause of action . . . . In contrast, Lawrence's allegation of tortious bad faith relates to the complete denial of the claim on the underlying policy." (204 Cal.App.3d at p. 575; accord *Abari, supra*, 205 Cal.App.3d at p. 536.) The same is true here.

Plaintiffs' other principal authority, *Frazier v. Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90 [214 Cal.Rptr. 883], also is distinguishable, if perhaps less bluntly. In *Frazier*, the plaintiff's husband died under disputed circumstances. The life insurance company immediately paid the basic death benefit but investigated whether the drowning was an accident or suicide and, nearly a year later, declined to pay the further, accidental death benefit. More than two years later, plaintiff filed an action for breach of contract and breach of the covenant of good faith. Reviewing a judgment for plaintiff after trial, the court assessed the applicability of the policy's provision requiring suit be brought within two years, three months after death. The court agreed with the trial court that plaintiff's breach of contract claim was barred by her failure to observe this limitation, but that her bad faith claim was not. The court reasoned that the claim for bad faith in denial of the accidental death benefit did not accrue until the insurer formally rendered its denial. "Prior to such time Mrs. Frazier has a right (so far as the policy limitation is concerned) to sit back and wait until denial of claim before urging bad faith." (*Id.* at p. 103.)

The same Court of Appeal that decided *Frazier* revisited the subject matter in *Lawrence, supra*, and there distinguished *Frazier*, like *Murphy*, on grounds it involved "a subsequent event [after the loss] . . . , a claim which arose after the insurer paid on the policy but did so not to the satisfaction of the beneficiary of the policy." (204 Cal.App.3d at p. 575.) *Frazier* also may be considered distinguishable in that it involved a life insurance policy; moreover, the policy limitation that was circumvented there did not, at least apparently, derive from statutory prescription, as with section 2071.

However, we do not reject *Frazier*'s application to the present case solely on these grounds, because *Frazier* actually (and factually) resembles this case far more than does *Murphy*. Unlike *Murphy,* in both *Frazier* and the

instant case the insurer's alleged misconduct involved breach of a primary obligation to pay policy benefits. *Frazier*'s analysis, quoted above, found this not dispositive, on the premise that the cause of action did not accrue until the insurer's refusal to pay. But, at least as applied to a policy governed by section 2071, that analytical approach would violate the statute, which effectively provides that claims for policy benefits on account of covered losses accrue upon inception of the loss.[4]

We recognize that the obligation to pay benefits due under the policy also constitutes a component of the duty of good faith and fair dealing imposed by law upon insurers. (*Murphy, supra,* 83 Cal.App.3d at pp. 48-49, quoting *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032].) But we find neither reason nor authority to signify that a plaintiff's election to seek redress under the implied covenant rather than the express contract should nullify the legislatively prescribed limitation for actions that are "on the policy" because grounded in a failure to pay benefits that are due under the policy and indeed constitute its very reason for being.

Our conclusion that section 2071 applies to plaintiffs' bad faith and related causes of action appears confirmed by the Supreme Court's recent decision concerning the statute, *Prudential-LMI Commercial Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230] (*Prudential*). In *Prudential* the court held that inception of the loss under section 2071 occurs only when appreciable damage appears, sufficient to inform a reasonable insured "that his notification duty under the policy has been triggered." (51 Cal.3d at p. 687.) In a further effort to import realistic flexibility into the statute, the court also held that the one-year period must be equitably tolled "from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied." (*Id.* at p. 693.) But in the course of according insureds both of these favorable rules, the court specifically endorsed the decisions in *Lawrence* and *Abari, supra,* including the latter's holding that section 2071 applied to the bad faith claim there asserted. (*Id.* at pp. 685-686, 692.) While implying that some bad faith suits might survive the limitation, the court cited and quoted *Abari* to the effect that "[the] rule that one-year suit provision does not apply to bad faith suits [is] inapplicable when insured's bad faith action is a 'transparent attempt to recover *on the policy,* notwithstanding his failure to commence suit within one year of accrual' . . . ." (*Id.* at p. 692.)

---

[4]The recent decision in *Weiner* v. *Allstate Ins. Co.* (1990) 223 Cal.App.3d 1201 [273 Cal.Rptr. 66] therefore does not aid plaintiffs either: *Weiner* essentially follows *Frazier.*

Significantly, *Prudential*'s rules of flexible accrual and equitable tolling will provide for policyholders under section 2071 much the same disposition as did *Frazier, supra*. ██ Thus, an insured who makes a timely claim will thereafter "ha[ve] a right (so far as the policy limitation is concerned) to sit back and wait until denial of claim" (*Frazier, supra*, 169 Cal.App.3d at p. 103) before the statute begins running again. But the statute still will have commenced running, as its terms require, upon inception of the loss (as defined in *Prudential*).

For the foregoing reasons, we conclude that plaintiffs' bad faith cause of action based on failure to pay benefits, and the emotional distress cause, which is merely a theoretical restatement of the same claim (cf. *Abari, supra*, 205 Cal.App.3d at p. 536), are governed by the one-year limitation prescribed by section 2071 for actions on the policy.

██ *Prudential*, however, makes section 2071's effect on this case less certain than it was before. The statute still must be deemed to have begun running on the date of the fire, because the complaint alleges a sufficiently disastrous loss, at which plaintiffs were personally present, to alert them immediately. Furthermore, the complaint admits plaintiffs did not commence suit until one day short of a year after State Farm mailed them notice of denial. Although the statute was equitably tolled for the earlier period beginning with plaintiffs' notice of damage to State Farm (*Prudential*, 51 Cal.3d at p. 693), to avoid the one-year bar plaintiffs must have given that notice immediately after the loss.[5]

Plaintiffs' general, pre-*Prudential* allegations that they gave "timely notice of claim, proof of loss, and demand for benefits" provide no assurance that the action was timely. But neither do they certainly establish that it was not. Under the established rule that a demurrer should not be sustained without leave to amend unless it appears beyond doubt from the complaint that the plaintiff cannot state a cause of action (see *Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 306 [191 Cal.Rptr. 704]), plaintiffs are entitled to an opportunity to amend their complaint to plead, if they can, specific facts showing their action was timely filed.

---

[5] We express *no opinion* about whether the tolling period ended when State Farm mailed notice of denial or at some other, proximate point.

The order of dismissal is reversed, with directions to grant plaintiffs leave to amend to establish, if they can, that their action is not barred under Insurance Code section 2071. The parties shall bear their own costs.

Roth, P. J., and Klein (B.), J.,* concurred.

A petition for a rehearing was denied December 28, 1990.

---

* Assigned by the Chairperson of the Judicial Council.