[No. A085617. First Dist., Div. Two. May 24, 2000.]

BLOSSOM LUM JANG, Cross-complainant and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY, Cross-defendant
and Respondent.

COUNSEL

Wild, Carey & Fife, John E. Carey, Jr., and Susan A. Bush for Cross-complainant and Appellant.

Thornton, Taylor, Downs, Becker, Tolson & Doherty, Clarke B. Holland and James F. Thornton for Cross-defendant and Respondent.

OPINION

RUVOLO, J.—

## I.

### INTRODUCTION

Appellant Blossom Lum Jang appeals from the trial court's award of summary judgment in favor of respondent State Farm Fire and Casualty Company on her cross-complaint for civil conspiracy and bad faith. Appellant contends the trial court erred when it determined her cross-complaint was an action on the insurance policy, which was barred by the policy's one-year statute of limitations. We reject this contention and affirm the trial court.

## II.

### BACKGROUND

In 1990, Frank and Shirley Stonich (the Stoniches) owned property (the property) that was insured under a policy issued by respondent (the policy). Appellant held a second mortgage on the building, and was a loss payee under the policy. Bay View Federal Bank (Bay View) held the first mortgage, and others held the third and fourth mortgages. On June 11, 1990, the Stoniches' building was severely damaged by a fire. At that time, the balance on the first mortgage was approximately $1.7 million, and the balance on appellant's second mortgage totaled $530,000 in principal and $52,470 in deferred interest. After the fire, respondent paid approximately $1.5 million to the Stoniches and Bay View to cover the fire loss.

In September 1991, State Farm issued a check payable to the Stoniches and Bay View for $145,456 in additional insurance proceeds. Thereafter, Bay View and appellant entered into a "Forbearance Agreement" under

which these proceeds were held by Bay View for appellant's benefit. Under this agreement, appellant agreed to maintain payments on the Bay View loan, and Bay View agreed not to foreclose on the loan for nine months. The agreement provided that in the event appellant foreclosed on the property, the additional insurance proceeds held in trust for appellant would be applied to the Bay View loan balance.

On June 11, 1991, the Stoniches filed suit against respondent, alleging that the policy entitled them to additional payments to cover the fire loss. In July 1992, appellant foreclosed on the property. At the trustee's sale, appellant purchased the property for a credit bid of $550,000, and assumed the Bay View mortgage obligations. Bay View deducted the additional insurance proceeds from the loan balance on October 1, 1992, pursuant to the forbearance agreement. In September 1994, appellant sold the property for approximately $3.7 million and paid off the Bay View loan.

On June 7, 1996, the parties to the Stonich lawsuit entered into a settlement agreement whereby the adequacy of respondent's payments for the fire loss would be resolved through binding arbitration under the following conditions: (1) respondent would pay a minimum of $200,000 and a maximum of $1.5 million in additional policy proceeds plus a maximum of $150,000 in interest; (2) the mortgagees would be notified of the arbitration and given an opportunity to participate; (3) if the mortgagees declined to participate in the arbitration, the Stoniches would receive $200,000 in settlement of their claims at the conclusion of the proceedings; and (4) any excess monies awarded by the arbitrator would be deposited in an interest-bearing account and disbursed in accordance with a declaratory relief action.

Shortly thereafter, appellant confirmed she had received notice of the settlement agreement, but made no effort to participate in the arbitration or object to the terms of the agreement. Instead, appellant clarified that she did not intend to waive any interest in the settlement funds.

The arbitration commenced in July 1996, with the Stoniches represented by the law offices of Pillsbury, Levinson & Mills. The arbitrator determined that the insurance payments for the fire loss were inadequate, and ordered respondent to pay an additional $382,604 in policy proceeds plus $167,812 in prejudgment interest. Under the terms of the settlement agreement, the total amount of the award was reduced to $532,604. Appellant was notified of this award on October 28, 1996.

On January 31, 1997, Pillsbury, Levinson & Mills instituted an action to force the Stoniches to allocate a certain amount of the settlement funds to

cover attorney fees. When respondent was named as a cross-defendant, it filed a cross-complaint in interpleader, and deposited the settlement funds with the clerk of the court. Appellant filed this cross-complaint against respondent on May 1, 1998, contending that the manner in which it negotiated the settlement agreement gave rise to a cause of action for civil conspiracy and bad faith.

On August 27, 1998, respondent filed a motion for summary judgment, contending that appellant's cross-complaint was barred by the policy provision requiring claims to be filed within one year of the loss or damage.[1] Appellant opposed the motion, arguing that her cross-complaint was not subject to the time limitations set forth in the policy because it was not a complaint "on the policy." On October 30, 1998, the trial court concluded the cross-complaint was time-barred, and entered a judgment in respondent's favor. This timely appeal followed.

III.

DISCUSSION

A. *Standard of Review*

■ Summary judgment is proper only where "there is no triable issue as to any material fact and . . . the moving party is entitled to . . . judgment as a matter of law." (Code Civ. Proc.,[2] § 437c, subd. (c).) We review de novo the trial court's award of summary judgment. (*Jacobs v. Universal Development Corp.* (1997) 53 Cal.App.4th 692, 697 [62 Cal.Rptr.2d 446].) " 'Inasmuch as summary judgment is a drastic procedure and should be used with caution [citation], the moving party's papers are strictly construed, while the opposing party's papers are liberally construed [citations].' " (*Id.* at pp. 697-698.) Additionally, any doubts regarding the propriety of awarding summary judgment are resolved in favor of the party opposing summary judgment. (*Ibid.*)

---

[1]Respondent also asserted the following contentions: (1) the first cause of action for conspiracy should be dismissed because it was not an independently viable claim; (2) the second cause of action should be dismissed because respondent's conduct did not constitute bad faith as a matter of law; (3) the second cause of action should be dismissed because appellant failed to demonstrate that she had been damaged by the settlement agreement as a matter of law; and (4) the claim for punitive damages failed because it was not supported by evidence of fraud, oppression or malice. Because we have concluded that the trial court correctly dismissed the cross-complaint as time-barred, we need not discuss the merits of these alternative contentions.

[2]All further undesignated statutory references are to the Code of Civil Procedure.

B. *Application of the One-year Statute of Limitations*

1. *Law*

■ "Under California law, all fire insurance policies must be on a standard form and, except for specified exceptions, may not contain additions thereto. ([Ins. Code,] § 2070.) This standard form provides that no suit or action for recovery of any claim shall be sustainable unless commenced within 12 months after the 'inception of the loss.' ([Ins. Code,] § 2071.)" (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 682 [274 Cal.Rptr. 387, 798 P.2d 1230] (*Prudential*).) The one-year statutory limitations period on insurance actions has " 'long been recognized as valid in California.' " (*Id.* at p. 683, quoting *C & H Foods Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1064 [211 Cal.Rptr. 765].)

The Stoniches' insurance policy contained a limitation-of-suit provision consistent with section 2070 of the Insurance Code. It provided: "No action shall be brought unless there has been compliance with the policy provisions . . . and the action is started within one year after the occurrence causing loss or damage."

■ Relying on *Murphy v. Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 [147 Cal.Rptr. 565] (*Murphy*) and *Frazier v. Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90 [214 Cal.Rptr. 883] (*Frazier*), appellant contends the trial court erred when it concluded that her cross-complaint was barred by the policy's one-year statute of limitations. She argues that the court should have applied the four-year statute of limitations for breach of fiduciary duty (§ 343), or the two-year statute of limitations for torts (§ 339, subd. 1), because the cross-complaint was not an action on the policy. We disagree.

In *Murphy, supra,* 83 Cal.App.3d at page 44, the plaintiffs brought an action against their insurance company for fraud, conspiracy to defraud, bad faith and intentional infliction of emotional distress. They claimed the insurer had wrongfully withheld payments for their fire loss, and caused additional damage to their home by using unqualified contractors to repair the property. The complaint alleged that these unqualified contractors: (1) failed to cover the plaintiff's roof so that the home and contents were further damaged by the elements; (2) performed the reconstruction so poorly that others had to be employed to correct the work; (3) returned carpeting from the home in damp, moldy and insect-infested condition; and (4) failed to return various items of personal property and home furnishings, or returned them to the home in worse condition. (*Id.* at p. 42, fn. 1.)

Division Two of the Fourth District Court of Appeal concluded these claims were not barred by the policy's one-year statute of limitations

because they did not constitute an action on the insurance policy. (*Murphy*, *supra*, 83 Cal.App.3d at p. 46.) The *Murphy* court explained, "For the most part, the conduct complained of is alleged wrongful conduct of [the insurer] with respect to the repair and restoration of the damaged property and the employment of persons to do that work and the allegedly unjustified initiation and prosecution by [the insurer] of the interpleader action with its attendant delay of several years in payment to plaintiffs of even those moneys admittedly owing under the appraisal award. The damages sought are not for any loss covered by the insurance policy but for damage to plaintiffs' home and personal property resulting from the untimely and unworkmanlike efforts of the persons and firms [the insurer] either employed or caused plaintiffs to employ, for the expenses incurred by plaintiffs in connection with the interpleader action and the suit by [one of the contractors] against plaintiffs allegedly resulting from [the insurer's] failure to make prompt payment, and for plaintiffs' emotional distress resulting from all of the foregoing." (*Ibid.*)

With regard to the plaintiff's tort claims based on breach of the duty of good faith and fair dealing, the *Murphy* court rejected the insurer's contention that because the duty arises from the insurance contract, such claims necessarily constituted an action on the policy. (*Murphy*, *supra*, 83 Cal.App.3d at pp. 48-49.) It opined that the insurer's tort duty to act fairly and in good faith "is not strictly a contractual obligation" such as the requirements "mandated by the terms of the policy itself—to defend, settle, or pay." (*Ibid.*) Instead, it is a separate and distinct obligation "imposed by law which governs a party to a contract in discharging its contractual responsibilities." (*Id.* at p. 48.)

The *Murphy* court explained, "there is a significant difference between 'arising out of the contractual relationship' and 'on the policy.' In a broad sense, all of plaintiffs' alleged causes of action may be said to 'arise out of the contractual relationship' but as we have seen, they are not actions 'on the policy.' Much of the conduct complained of in the third and fourth causes of action occurred long after the fire loss and related to the repair and restoration of plaintiffs' home and personal property and the employment of persons and firms to do that work, the institution and prosecution of the interpleader action. Here again, the damages claimed were not caused by any risk insured against under the policy and were not recoverable under the policy." (*Murphy*, *supra*, 83 Cal.App.3d at p. 49.)

In *Frazier*, *supra*, 169 Cal.App.3d 90, the plaintiff brought an action against the company that issued her husband's life insurance policy, alleging its refusal to pay her an accidental death benefit violated the covenant of

good faith and fair dealing. The plaintiff filed a timely claim on the policy on or before the deadline, June 11, 1975; however, the insurance company determined her claim was based on a suicide, and denied it on February 24, 1976. (*Id.* at p. 103.) The complaint was filed two years and 24 days later, on March 20, 1978. (*Ibid.*)

Division Five of the Second District Court of Appeal concluded that the bad faith action was not barred by the two years and 90 days statute of limitations set forth in the insurance policy because the policy's statute of limitations did not commence to run until February 24, 1976, when the insurance company denied her claim. The court reasoned: "Suppose [the insurer] had written to [the plaintiff] on February 24, 1976, an equivocal letter stating that they were still in doubt whether her husband's death was caused by suicide but that they would make further efforts to run down evidence. Suppose [the insurer] then should make further efforts and uncover no new significant evidence, yet wait until February 24, 1977, or February 24, 1978, before writing to [the plaintiff] the same letter actually sent on that date—could [the insurer] still urge that an action would still have to be filed no later than June 11, 1977? [¶] As the above example demonstrates, and as found by the trial judge, [the plaintiff's] action does not commence until [the insurer] denies her claim on the ground of suicide. Prior to such time [the plaintiff] has a right (so far as the policy limitation is concerned) to sit back and wait until denial of claim before urging bad faith. Because it is not until [the insurer] actually denies the claim on the ground of suicide that [she] can actually ascertain whether or not [it] has acted in bad faith. So long as [the insurer] continues to tell [the plaintiff] they are trying to uncover new evidence, they have not committed an ultimate act of bad faith, and [the plaintiff] has a right to rely upon their assurances." (*Frazier, supra,* 169 Cal.App.3d at pp. 103-104.) Relying on *Murphy, supra,* 83 Cal.App.3d 38, the court alternatively concluded that the action was exempt from the policy's statute of limitations "based upon the hybrid contractual nature of the implied convenant of good faith and fair dealing." (*Frazier, supra,* 169 Cal.App.3d at p. 104.)

Subsequent cases have construed the holdings set forth in *Murphy* and *Frazier* narrowly, and limited the application of the *Murphy* and *Frazier* exemption to their specific facts. (*Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 720-721 [5 Cal.Rptr.2d 1] (*Velasquez*). The *Velasquez* court provided this insightful analysis of the law's evolution in this area: "[C]ourts [following *Murphy* and *Frazier* have] declined to extend a blanket exemption from policy limitations clauses where the gravamen of the bad faith action pertained to the insurer's handling of the initial claim for loss. [¶] In *Lawrence* v. *Western Mutual Ins. Co.* [(1988)] 204 Cal.App.3d 565

[251 Cal.Rptr. 319], a homeowner brought a bad faith action based on the denial of his claim under a homeowner's policy for damages due to earth subsidence. The claim had been denied for a number of reasons including the insurer's assertion that the damage existed prior to the date of coverage, that the claim had been presented after the homeowner had repaired the damage, precluding investigation by the insured, and on grounds of timeliness. (*Id.* at p. 570.) The insurer successfully moved for summary judgment under the policy's limitations clause. The Court of Appeal affirmed.

"The court rejected the argument that the action was not on the policy, and therefore not subject to the limitations clause. 'Lawrence's allegation of tortious bad faith relates to the complete denial of the claim on the underlying policy. In both *Murphy* and *Frazier*, a subsequent event occurred after the initial policy coverage was triggered which was the basis for the [bad faith] cause of action. The subsequent event related to the policy, but either was not a claim directly on the policy (*Murphy*) or was a claim which arose after the insurer paid on the policy but did so not to the satisfaction of the beneficiary of the policy (*Frazier*). Here, Lawrence's cause of action for bad faith in purportedly misrepresenting the scope of coverage in the policy is fundamentally a claim on the policy and is thus time barred.' (*Lawrence* v. *Western Mutual Ins. Co.*, *supra*, 204 Cal.App.3d at p. 575.)

"Likewise, *Abari* v. *State Farm Fire & Casualty Co.* [(1988)] 205 Cal.App.3d 530 [252 Cal.Rptr. 565], also involved a bad faith action brought after denial of a claim for subsidence damage to the insured's property. The insurer's demurrer was sustained on grounds of the limitations clause, and the ensuing judgment affirmed on appeal. In *Abari*, too, the appellate court rejected the insured's reliance on *Murphy* because *Murphy* involved 'wrongful conduct by the insurer subsequent to their fire loss . . . .' (*Abari* v. *State Farm Fire & Casualty Co.*, *supra*, [205 Cal.App.3d] at p. 536.) By contrast, in *Abari*, the fact that the insured sought the policy benefits plus interest revealed that the action was 'a transparent attempt to recover on the policy' and was time barred. (*Ibid.*, italics omitted.)

"The *Lawrence* and *Abari* decisions evince a trend by the appellate courts to limit the exemption from the limitations clause set forth in *Murphy* and *Frazier* to the facts of those cases. [Citations.] That exemption applies only where the events constituting bad faith occur after initial policy coverage. Where denial of the claim in the first instance is the alleged bad faith and the insured seeks policy benefits, the bad faith action is on the policy and the limitations provision applies." (*Velasquez*, *supra*, 1 Cal.App.4th at p. 721.)

Based on this review of the case law, the *Velasquez* court concluded that a bad faith action alleging the insurer had wrongfully denied a fire loss claim

for nonpayment of the premiums was governed by the policy's statute of limitations. (*Velasquez, supra,* 1 Cal.App.4th at p. 722.) The court reasoned: "A bad faith action based on denial of a claim in the underlying policy is an action on the policy. [Citation.] Among the damages sought by appellants are the policy benefits plus interest, revealing that their action, like the insured's in *Abari,* is an 'attempt to recover on the policy . . . .' (*Abari* v. *State Farm Fire & Casualty Co., supra,* 205 Cal.App.3d at p. 536, italics omitted.) It is true that appellants seek additional damages as well. Such damages, however, relate solely to their allegations of denial of their claim and wrongful cancellation and not to any additional acts by [the insurer]. The two claims are inextricably bound. None of the actions alleged by appellants as bad faith relate to events subsequent to initial policy coverage so as to convert their action from one on the policy to one which is not." (*Velasquez, supra,* 1 Cal.App.4th at p. 722.)

In *Prieto v. State Farm Fire & Casualty Co.* (1990) 225 Cal.App.3d 1188 [275 Cal.Rptr. 362] (*Prieto*), Division Two of the Second District Court of Appeal soundly rejected the suggestion in *Frazier* and *Murphy* that the "hybrid" nature of claims under the covenant of good faith and fair dealing makes them exempt from the policy's statute of limitations. The *Prieto* court explained, "We recognize that the obligation to pay benefits due under the policy also constitutes a component of the duty of good faith and fair dealing imposed by law upon insurers. (*Murphy, supra,* 83 Cal.App.3d at pp. 48-49, quoting *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032].) But we find neither reason nor authority to signify that a plaintiff's election to seek redress under the implied covenant rather than the express contract should nullify the legislatively prescribed limitation for actions that are 'on the policy' because grounded in a failure to pay benefits that are due under the policy and indeed constitute its very reason for being.

"Our conclusion that [Insurance Code] section 2071 applies to plaintiffs' bad faith and related causes of action appears confirmed by the Supreme Court's recent decision concerning the statute, *Prudential-LMI Commercial Insurance* v. *Superior Court*[, *supra,*] 51 Cal.3d 674 . . . (*Prudential*). In *Prudential* the court held that inception of the loss under section 2071 occurs only when appreciable damage appears, sufficient to inform a reasonable insured 'that his notification duty under the policy has been triggered.' (51 Cal.3d at p. 687.) In a further effort to import realistic flexibility into the statute, the court also held that the one-year period must be equitably tolled 'from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied.' (*Id.* at p. 693.) But in the course of according insureds both of these favorable rules, the court specifically endorsed the decisions in *Lawrence* and *Abari, supra,*

including the latter's holding that section 2071 applied to the bad faith claim there asserted. (*Id.* at pp. 685-686, 692.) While implying that some bad faith suits might survive the limitation, the court cited and quoted *Abari* to the effect that '[the] rule that one-year suit provision does not apply to bad faith suits [is] inapplicable when insured's bad faith action is a "transparent attempt to recover *on the policy*, notwithstanding his failure to commence suit within one year of accrual" . . . .' (*Id.* at p. 692.)" (*Prieto, supra,* 225 Cal.App.3d at p. 1195, original italics; see also *Bank of America Nat. Trust v. Allstate Ins. Co.* (1998) 29 F.Supp.2d 1129, 1134 [finding that the *Prieto* court's view that "the statute of limitations on the policy applies to all 'bad faith' actions" correctly states California law].)

To the extent that *Murphy* and *Frazier* stand for the proposition that an insured may avoid the policy's statute of limitations by simply recasting contractual claims as claims sounding in tort, we agree with the *Prieto* court that *Murphy* and *Frazier* were wrongly decided. (*Prieto, supra,* 225 Cal.App.3d at p. 1195.) Regardless of whether the insured elects to file a complaint alleging solely tort claims, we hold that an action seeking damages recoverable under the policy for a risk insured under the policy is merely a "transparent attempt to recover *on the policy.*" (*Abari v. State Farm Fire & Casualty Co., supra,* 205 Cal.App.3d 530, 536 (*Abari*) cited with approval in *Prudential, supra,* 51 Cal.3d at p. 692, original italics.) As such, it is subject to the policy's statute of limitations.

The question remains whether other portions of the *Frazier* and *Murphy* courts' analysis have any continuing vitality. In answering this question, we join the majority of courts which have considered this issue, and conclude that *Frazier* and *Murphy* should be narrowly construed and limited to their own unique facts.[3]

As stated previously, the *Frazier* court's reliance on the hybrid nature of bad faith actions in reaching its result has been thoroughly discredited by subsequent courts. (*Ante,* at pp. 1299-1301.) However, the *Frazier* court also determined that the insured's action was not time-barred because the policy's statute of limitations was equitably tolled until the insurer denied coverage under the policy. The court concluded "Prior to such time [the plaintiff] has a right (so far as the policy limitation is concerned) to sit back

---

[3]In so doing, we note that two opinions broadly construing the *Murphy/Frazier* exemption have been depublished by the Supreme Court. (*Umann v. Excess Ins. Co.* ▮ (Cal.App.); *Associates Nat. Mortgage Corp. v. Farmers Ins. Exchange* ▮ (Cal.App.).)

and wait until denial of claim before urging bad faith. Because it is not until [the insurer] actually denies the claim on the ground of suicide that [the plaintiff] can actually ascertain whether or not [it] has acted in bad faith." (*Frazier, supra,* 169 Cal.App.3d at p. 103.)

Our Supreme Court has endorsed the *Frazier* court's view that principles of equitable tolling require the policy's one-year statute of limitations to be tolled from the time the insured timely files a claim until the insurer gives notice that it is denying coverage. (*Prudential, supra,* 51 Cal.3d 674.) Thus, the portion of the *Frazier* analysis pertaining to equitable tolling appears to remain authoritative.

In *Murphy,* the court also relied on considerations other than the tortious nature of the insured's action in order to conclude that it fell outside the policy. The *Murphy* court focused on the nature of the damages sought by the insured. It noted that the complaint was seeking damages attributable to the insurer's retention of unqualified workers to repair the residence after the initial fire loss. (*Murphy, supra,* 83 Cal.App.3d at p. 49.) Thus, the insured in *Murphy* suffered a loss over and above the original loss that triggered the policy provisions. In essence, this was a "second loss because of the contractors' shoddy work." (*Campanelli v. Allstate Ins. Co.* (C.D.Cal. 2000) 85 F.Supp.2d 980, 985.) Because these damages "were not caused by any risk insured against under the policy and were not recoverable under the policy," the *Murphy* court concluded that the insured's action was not an action on the policy. (*Murphy, supra,* 83 Cal.App.3d at p. 49.) In keeping with the "trend" of narrowly construing *Murphy* (*CBS Broadcasting Inc. v. Fireman's Fund Ins. Co.* (1999) 70 Cal.App.4th 1075, 1086 [83 Cal.Rptr.2d 197]), we conclude *Murphy* remains compelling only to the extent that it sets forth a narrow exemption for actions in which the insured seeks damages that are not recoverable under the policy, stemming from conduct by the insurer which results in the uncovered damages.

### 2. *Analysis*

Here, appellant's cross-complaint includes causes of action for civil conspiracy and insurance bad faith based on respondent's participation in the June 10, 1996 arbitration agreement. The conspiracy claim alleges respondent agreed with others to pay the Stoniches $200,000 after the arbitration "with the express purpose of insulating said funds from the claims of parties who held security interest or mortgages on the insured property and were named as loss payees on the insurance policy or had any interests in or claim to the insurance proceeds."

The bad faith claim alleged respondent "was aware that the Stoniches were not entitled to any sum from the insurance proceeds because of other

loss payees under the insurance policy[,] yet [respondent] with the purpose of minimizing its costs agreed to and did proceed to arbitration solely with the Stoniches in violation of [respondent's] duty of good faith and fair dealing with regard to the insurance policy and the loss payees who were express beneficiaries of the contract as additional insureds. [Respondent] thereby deprived said insured of benefits pursuant to the policy without proper cause and derogated [appellant's] rights under the policy."

Our review of the allegations of appellant's cross-complaint reveals that the crux of her action is her claim that the arbitration agreement was structured so that she was denied payment of insurance proceeds allegedly due to her under the policy. Because the cross-complaint sought damages recoverable under the policy for a risk insured under the policy, we agree with the trial court that the cross-complaint is an action under the policy.

Appellant's citations to *Murphy* and *Frazier* are unavailing. As previously discussed, the limited exemption set forth in *Murphy* does not apply because appellant primarily seeks to recover benefits allegedly owed to her under the policy stemming from the initial loss that triggered the insurance coverage. (*Ante*, at pp. 1302-1303.) We acknowledge that, as a collateral matter, appellant seeks punitive damages based on the allegedly fraudulent, oppressive, or malicious nature of respondent's act of depriving her of these policy benefits. However, the mere fact that appellant's causes of action sound in tort, thereby entitling her to seek punitive damages, is insufficient to transform her action into an action outside of the policy. (*Velasquez, supra*, 1 Cal.App.4th at pp. 719-722.)

*Frazier* also provides no support for appellant's claim. In our view, the only portion of *Frazier* with any precedential value is the court's analysis of the principles of equitable tolling. However, in this case, regardless of whether we conclude that the one-year statute of limitations should be equitably tolled so that it is calculated from the date respondent allegedly committed insurance bad faith by entering into the June 7, 1996 settlement agreement, appellant's May 1, 1998 cross-complaint is still untimely.

Finally, we reject appellant's contention that she is exempt from the policy's statute of limitations because the alleged bad faith occurred after the insurer determined the fire was a covered loss. While it has been emphasized that, "[The *Murphy/Frazier*] exemption applies only where the events constituting bad faith occur after initial policy coverage" (*CBS Broadcasting Inc. v. Fireman's Fund Ins. Co., supra*, 70 Cal.App.4th 1075, 1086), the existence of a subsequent triggering event alone is insufficient to demonstrate that an action should fall within the extremely narrow exemption set forth in

*Murphy* and *Frazier.* Where, as here, the only damage caused by the subsequent triggering event is the failure to receive benefits the plaintiff believes are owing under the policy, the action does not fall within the exemption because it is nothing more than a "transparent attempt to recover *on the policy,* notwithstanding [the plaintiff's] failure to commence suit within one year of accrual." (*Abari, supra,* 205 Cal.App.3d at p. 536, original italics.) Thus, we conclude that the trial court properly awarded summary judgment to respondent after determining that appellant's cross-complaint was an action on the policy that was barred by the one-year statute of limitations.

## IV.

### DISPOSITION

The judgment of the trial court is affirmed.

Kline, P. J., and Lambden, J., concurred.

On June 8, 2000, the opinion was modified to read as printed above.