Filed 7/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KATHERINE ROSENBERG-WOHL,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant and Respondent. | A163848<br><br>(San Francisco County<br>Super. Ct. No. CGC-20-587264) |

Plaintiff/appellant Katherine Rosenberg-Wohl (plaintiff) had a homeowners insurance policy with defendant/respondent State Farm Fire and Casualty Company (State Farm), providing coverage on her home in San Francisco; the policy has a limitation provision that requires lawsuits to be "started within one year after the date of loss or damage." In late 2018 or early 2019, plaintiff noticed that on two occasions an elderly neighbor stumbled and fell as she descended plaintiff's outside staircase, and learned that the pitch of the stairs had changed and that to make the stairs safe the staircase needed to be replaced. In late April 2019, plaintiff authorized the work and contacted State Farm, and on August 9, she submitted a claim for the money she had spent. On August 26, State Farm denied the claim. Sometime later, plaintiff's husband, attorney David Rosenberg-Wohl, reached out to State Farm "to see if anything could be done," and in August 2020 a

1

State Farm adjuster said it had reopened the claim. And a few days later denied it.

In October 2020, represented by her husband, plaintiff filed two lawsuits against State Farm in San Francisco Superior Court. One alleged two causes of action, for breach of the policy and for bad faith. That lawsuit was removed to federal court, and was resolved against plaintiff on a motion to dismiss based on the one-year limitation provision. It is currently on appeal in the Ninth Circuit.

The other action, the one before us, purports to allege a claim for violation of California's unfair competition law. This case was also resolved against plaintiff, also based on the limitation provision—here, when the trial court sustained a demurrer to the second amended complaint without leave to amend. Plaintiff appeals, asserting two arguments: (1) the one-year limitation provision does not apply to her unfair competition claim, and (2) even if it does, State Farm waived the limitation provision. We affirm.

## BACKGROUND

### The General Setting[1]

Plaintiff owns a home in San Francisco, insured under a policy with State Farm. The policy contains a provision entitled "Suit Against Us" that states: "No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage."

---

[1] Our recitation of facts is based upon the allegations in plaintiff's second amended complaint, which we accept as true if properly pled. (*290 Division (EAT), LLC v. City and County of San Francisco* (2022) 86 Cal.App.5th 439, 450.) We also rely on facts that are the subject of judicial notice (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318) which, as pertinent here, include the federal case, of which the trial court took judicial notice below, and of which plaintiff requests judicial notice here, a request we grant.

In late 2018 or early 2019, plaintiff noticed that an elderly visitor had twice stumbled and fell when descending the exterior staircase of plaintiff's home and, upon investigating, learned that the pitch of the staircase had changed, and the entire staircase needed to be replaced. Plaintiff authorized the work and notified State Farm of it on April 23, 2019. Over three months later, on August 9, she submitted a claim to State Farm for her construction expenses, which by then were approximately $52,600, with another $16,800 in anticipated expenses for additional work.[2]

By letter dated August 26—plaintiff alleges, without any investigation—State Farm denied the claim. While the letter itself is not in the record, plaintiff alleges that the letter stated that there was "no evidence of a covered cause or loss nor any covered accidental direct physical loss to the front exterior stairway," which letter went on to note that the policy "excludes coverage for this type of damage. . ." identifying five items as "this type of damage":

(1) "wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown";

(2) "corrosion, electrolysis or rust";

(3) "wet or dry rot";

(4) "settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings";

(5) "fungus."

The letter also specifically referenced "the suit limitation period" as a "policy defense." And, plaintiff alleges, State Farm had "no basis for its

_____

[2] The claim is not in the record. However, in the federal case plaintiff alleged that her "understanding is that some portion of the staircase had just settled." We cannot help but note that one of the perils excluded by the policy is loss by "settling."

3

decision," as it had not inspected the stairs, asked her or her husband questions, interviewed the elderly neighbor, or contacted any of the contractors involved.

At some unspecified point, plaintiff's husband reached out to State Farm insurance agent Doug Lehr "to see what, if anything could be done," and the agent said he would see what he could do. On August 10, 2020, State Farm adjuster Rita Lee left a voice-mail message stating that State Farm had "reopened" the claim, and that she was making herself available to address and possibly resolve any coverage questions plaintiff had before she might want to "move forward with the next step."

On August 24, Mr. Rosenberg-Wohl spoke with Lee. Among other things Lee said that it if the claimed loss were "to be covered," something "sudden" had to have happened. And what plaintiff claimed coverage for, Lee said, was just "preventative."

Immediately following that conversation, Lee denied what plaintiff calls the "newly adjusted claim," which plaintiff alleges reiterated this: "Based on the investigation findings, there was no evidence of a covered cause for accidental direct physical damage to the property," confirming what "[Lee] stated on the phone: [t]he policy does not provide coverage for preventative nor safety measures to the property. Maintenance would be the responsibility of the property owner to properly maintain the property to keep it safe."

Weeks later, plaintiff filed her lawsuits.

**The Proceedings Below**

On October 22, 2010—some 18 months after she had replaced the staircase, 14 months after State Farm had denied her claim the first time, and nearly six months after the one-year limitation period of the policy had

4

expired—plaintiff filed two lawsuits in San Francisco County Superior Court: (1) action No. 587262 and (2) action No. 587264.

Action No. 587262 alleged two claims, for breach of the policy and violation of the covenant of good faith and fair dealing. That case was removed to federal court, where it was dismissed by the District Court on a motion to dismiss. It is currently on appeal: N.D. Cal 2022, 2022 WL 901545, appeal pending.

Action No. 587264, this case, initially alleged causes of action for declaratory relief and violation of the Unfair Competition Law (UCL). The action was designated as a "class action," filed by plaintiff "on behalf of herself and those similarly situated." The case was designated complex and assigned for all purposes to the Honorable Anne-Christine Massullo.

A few months later, apparently before State Farm filed a responsive pleading, plaintiff filed an amended complaint. The amended complaint was titled as one "stating claim for unfair competition and need for public injunctive relief."

State Farm filed a demurrer to the amended complaint on two bases: (1) there was another action pending, and (2) the complaint failed to state a claim under the UCL because the action was "time-barred" and State Farm "has not acted unfairly." State Farm also filed a motion to strike.

At the hearing on the demurrer, Judge Massullo questioned Mr. Rosenberg-Wohl about whether this action was requesting "specific injunctive relief." The is what followed:

"MR. ROSENBERG-WOHL: Correct.

"THE COURT: And the plaintiff is saying, 'Court, you should tell State Farm, "This is the way that you must handle claims. You must do A, B, C, and D when you are denying a claim" '—or ' "investigating and then denying

5

a claim. There should be specific" '—' "there's a specific process and specific language that you can use." ' That's the public relief that's being sought here; correct?

"MR. ROSENBERG-WOHL: Correct. But there are many ways—there are many ways to accomplish that result. It doesn't have to be in a detailed order and specific stuff. It's a standard, a simple standard, that they can follow. . . . [¶] I mean, you could imagine—for example, if at the end of the litigation, the argument is, 'State Farm, you have an obligation to objectively consider all claims presented,' their business practice would change fundamentally, and you've just said one sentence."[3]

On April 20, 2021, Judge Massullo filed an order on the demurrer and the motion to strike, holding that the one-year limitation provision applied to plaintiff's claim, and sustaining the demurrer with leave to amend to add additional facts supporting waiver. She also ruled that the issue of whether State Farm acted unfairly (that is, whether the replacement staircase is or is not covered under the policy) could not be decided on demurrer. And finally, as to the motion to strike the requests for and references to "public injunctive relief," she granted it with leave to amend.

On May 21, plaintiff filed a second amended complaint (SAC), adding, apparently without leave of court, a claim for false advertising, a complaint labeled "Second Amended Complaint Stating a Claim for False Advertising, Unfair Competition, and Need for Public Injunctive Relief." The SAC is 18 pages long, comprised of 64 paragraphs, and begins with its preliminary

---

[3] At oral argument here, Mr. Rosenberg-Wohl could not answer whether any such injunction would be mandatory or prohibitory. And, we hasten to add, at no point along the way has he as much as suggested how the superior court would monitor any such injunction.

allegations as to the parties and the policy. There follows a capitalized, boldface heading that "**Plaintiff's Experience With How State Farm Adjudicates One Particular Insurance Policy, Her Homeowners Policy**," after which the complaint alleges in detail, for some 36 paragraphs, the facts set forth above. The paragraphs allege among other things that "State Farm summarily denied" plaintiff's claim; that State Farm "did not explain its analysis or justify its conclusion in a way that [plaintiff] could evaluate State Farm's coverage decision"; and that "State Farm had no basis for its decision." And it goes on with these two paragraphs:

"21. Because State Farm did not investigate Plaintiff's claim, State Farm had no reasonable basis for its determination that coverage should be denied. This conduct was intentional; this conduct was and is designed to deny claimants coverage for all but the most obvious of covered claims, to the detriment of State Farm's policyholders and to its own benefit.

"22. On information and belief, State Farm has a practice of obfuscating and regularly fails to make clear precisely what the basis is for its denials. On information and belief, State Farm followed that practice here. Instead of explaining how Plaintiff's claim was not covered under the homeowners policy, State Farm listed a wide range of excluded risks that were *possibly* applicable—'the usual suspects,' as it were—one or more of which, apparently was the basis for its denial of coverage [going on to list the exclusions quoted above] . . . ."

The SAC then states, again in capitalized boldface, that "**This Is Not A Lawsuit For Damages For Breach Of Contract; Rather It Is A Challenge To How State Farm Does Business**." It then refers to the federal action, describing it as a claim for money, and as to which the one-year limitation applies. In claimed contrast, plaintiff alleges, "this particular

7

claim is not on the contract but on State Farm's claims adjudications process, hence the appropriate statute of limitations here is that applicable to the false advertising and unfair competition claims, below. . . . [¶] This action is different; it has nothing to do with State Farm's particular insurance contract (policy FP-7955) or how State Farm (mis)treated Plaintiff in the context of her property claim. Win or lose her claim for coverage and damages in federal court, the business practices employed by State Farm need to change. That is the goal of this lawsuit. Someone needs to hold State Farm to the standard its customers (and the law of this State) demand. Plaintiff has standing to bring this claim for injunctive relief because she continues to have her homeowners policy (and expects to have it into the foreseeable future) and that allows her to try to hold State Farm to task in how it manages of its property insurance policies, whether they be the particular homeowners policy she has, other homeowners policies, automobile policies, personal property policies, or otherwise. The process of adjudication State Farm uses is the same; the same standard of reasonableness and fairness should apply. . . ."

The SAC then goes on to allege the substance of the two causes of action, the first for false advertising, the second, for unfair competition. And as to the UCL claim, the SAC alleges among other things as follows:

"52. Under California law, State Farm is to give at least as much consideration to the interests of its insureds as it gives to its own interests when adjudicating a claim.

"53. However, as is evident from the allegations above, State Farm does not accept this legal obligation. Without a Court order specifically requiring State Farm to comply with this standard, State Farm will continue to violate its legal obligations to its insureds.

8

"54. Drafting such an order is straightforward. An example would be: 'State Farm is ordered, when adjudicating any property insurance claim presented to it, to give at least as much consideration to the interests of its insured as to its own interests.'

"a. With such an order, State Farm would know that it must investigate in a good faith and reasonable manner all claims made to it.

"b. With such an order, State Farm would know that it must identify the applicable reason(s) for any denial, so that a claimant can evaluate State Farm's good faith and reasonableness and decide whether and how to submit new or different evidence or argumentation. . . ."

Then, after some conclusory allegations that State Farm's conduct constitutes an unfair business practice, the SAC adds this: "Without this Court's intervention, State Farm will continue the procedures it has employed that have failed to assure that it gives at least as much consideration to the welfare of its insured as it gives to its own interests when determining whether to settle a claim."

Finally, the SAC refers, again in capitalized boldface, to "**Public Injunctive Relief and Attorneys Fees Under [Code of Civil Procedure section] 1021.5**," and alleges as follows:

"62. It is possible that Plaintiff will benefit from this lawsuit, to be sure. But it is not likely. There are no damages sought here; that is in the federal action. And while it is possible that, given her continuing relationship with State Farm and her possession of property policies, that she will make another claim such that a change in policy will benefit her, that is only a possibility. By contrast, it is a statistical certainty that other Californians who either have a State Farm homeowners policy like Plaintiff has or have any number of other State Farm property insurance policies will

9

suffer losses and make a claim and benefit greatly from the injunctive relief Plaintiff seeks here. That is truly the public injunctive relief justifying an award of attorneys fees under [Code of Civil Procedure section 102[1].5."

On June 21, State Farm filed a demurrer and a motion to strike. The demurrer argued that both causes of action failed to state a claim, the first, for false advertising, because "Plaintiff's claim is time-barred under her insurance policy and Plaintiff fails to satisfy the reasonable consumer standard required to assert claims regarding State Farm's alleged representations," and the second, for violation of the UCL, because "Plaintiff's claim is time-barred under her insurance policy."

On July 19, plaintiff filed her opposition to the demurrer. The opposition was a total of eight pages, only the first five of which dealt with the issue here.[4] Plaintiff's opposition argued that the applicable limitations period was four years under Business and Professions Code section 17208, and that plaintiff could not be held to have waived the four-year limitation provision, in the course of which plaintiff attempted to distinguish a case State Farm had cited, *Sullivan v. Allstate Ins. Co.* (C.D. Cal. 1997) 964 F.Supp. 1407 (*Sullivan*). Plaintiff's opposition then turned to the issue of waiver, which acknowledged that "There is superficial appeal to the [State Farm] arguments, given the language of the cases State Farm cites." And the opposition went on to acknowledge several cases holding against plaintiff, which cases were based on language in *Prudential-LMI Com. Ins. v. Superior Court* (1990) 51 Cal.3d 674 (*Prudential*) stating that "conduct by the insurer after the limitation period has run . . . cannot, as a matter of law, amount to a

---

[4] The last three pages in the opposition addressed the false advertising claim.

10

waiver or estoppel," (*Prudential, supra*, 51 Cal.3d at p. 690, fn. 5), going on to essentially argue that the language did not mean what it said.

State Farm filed a reply, and the demurrer came on for hearing on July 26, prior to which Judge Massullo had issued a tentative ruling in favor of State Farm. The hearing began with Mr. Rosenberg-Wohl stating that plaintiff was abandoning the false advertising claim. He then said, "there are three issues he wished to address," the first two of which involved the limitation provision, the third waiver. He did, counsel for State Farm responded, and at the conclusion of the hearing Judge Massullo took the matter under submission.

On July 29, Judge Massullo entered her order sustaining the demurrer without leave to amend, a comprehensive order indeed, eight pages of thoughtful analysis. Following an exposition of the background," she set forth her "discussion and analysis," essentially concluding as follows:

"[T]he limitation period in the contract applies to all of plaintiff's claims, including her claim for unfair practices, false advertising, and injunctive relief because the essence of the relief sought relates to the denial of her claim. California cases interpreting one-year limitations provisions have made clear that the one-year provision bars both contract and tort actions not filed within that period, as long as the claim for relief is 'on the policy,' meaning that it seeks to recover policy benefits *or is grounded upon a failure to pay policy benefits*. [Citations.]

"To be sure, Plaintiff here does not seek to recover policy benefits. But the Court is persuaded that Plaintiff's claims are nonetheless 'on the policy' because they are 'grounded upon [State Farm's] failure to pay policy benefits.' Plaintiff's initial claim on the policy, State Farm's denial, and Plaintiff's subsequent claim for relief are all inextricably intertwined. The gravamen of

11

Plaintiff's claim is that State Farm has a process of adjudication wherein it 'summarily' denies claims without investigating or providing a precise basis for its denials, 'depriv[ing] Plaintiff of any reasonable opportunity to question or challenge the basis of the denial.' [Citations.] Though Plaintiff seeks equitable relief in the form of an injunction, [citation], as opposed to damages (i.e., policy benefits), the essence of the relief sought relates to the denial of her claim." (Fn. omitted.) And, she added, "All of the alleged acts which form the basis of Plaintiff's claims occurred during the claim handling process. [Citations.]" Finally, Judge Massullo held that State Farm had not waived the limitation provision.

Judgment was entered for State Farm, from which plaintiff filed her appeal.

## DISCUSSION

### The One-Year Suit Provision

The one-year limitation provision in the State Farm policy is there because "[b]y statute . . . insurance policies providing fire insurance on California property must include the standard form provisions contained in [Insurance Code section] 2071 or provisions that are at least their substantial equivalent." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2022) ¶ 6:254.) The standard form provisions required by this statute include one entitled "Suit," which states: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss." (Ins. Code, § 2071.) And such one-year limitation provisions have long been held valid, as we ourselves noted in *Jang v. State Farm Fire & Casualty*

12

*Co.* (2000) 80 Cal.App.4th 1291, 1296 (*Jang*), quoting *C & H Foods Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1064.)

### The Law of Demurrers

As to the law on demurrers in this setting, our colleagues in Division Four recently confirmed the applicable principles, in *Raja Development Co., Inc. v. Napa Sanitary Dist.* (2022) 85 Cal.App.5th 85, 91–92: " 'This appeal follows the sustaining of a demurrer. The application of the statute of limitations on undisputed facts is a purely legal question [citation]; accordingly, we review the lower courts' rulings de novo. We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [plaintiffs'] claim is barred as a matter of law.' [Citation.] . . . [¶] 'To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action.' [Citation.] ' "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code." ' [Citation.] 'What is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct.' " (See also *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810–811; *Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 526.)

### The UCL Claim is Time-Barred
### Introduction

Plaintiff's first argument is that Judge Massullo erred because the four-year statute of limitations governs. The argument is brief indeed, less than five pages long, included within which is plaintiff's recognition that "there is . . . no doubt that an insured cannot plead around the one-year limitations provision by labeling her cause of action something different than breach of contract," citing to *Jang, supra*, 80 Cal.App.4th at p. 1301,

*Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 722 (*Velasquez*), and *Sullivan*, *supra*, 964 F.Supp. at pages 1414–1415. After that acknowledgement—perhaps concession is more apt—plaintiff continues with this: "But where damages are not sought but rather the relief sought is change of an unfair policy that affects not just the insured but the public at large, the insurer's policy promise to the insured is not at issue," citing to *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1280–1281 (*20th Century*).

Plaintiff's brief makes another concession, that "Simply alleging a claim under the UCL, of course, is no different from one alleging breach of the covenant of good faith and fair dealing or any other claim in which the point is to recover money for breach of contract. [Citations.]" And plaintiff's argument concludes with this: "But here the UCL claim about practice and procedure is not a contract claim—the conduct is unfair even though it is not required under the policy, and it is unfair regardless of whether it leads to payment under the policy or no." And plaintiff asserts, she seeks "only injunctive relief . . . and that is why the four-year UCL statutory period applies," going on to cite five cases in claimed support.

Plaintiff is wrong. And the few cases cited, all without discussion, do not avail her.

**The One-Year Policy Limitation Provision Applies**

As quoted, the limitation provision in the State Farm policy states that "no action" shall be brought, language different from that in the standard policy, which refers to a "suit or action on the policy." However, State Farm does not assert that the policy limitation provision must be construed according to its literal terms; indeed, at oral argument, counsel for State Farm conceded that her client does not read the provision "more broadly"

14

than the standard provision. Rather, State Farm asserts "the Legislature has expressly endorsed" the provision under Insurance Code section 2071, and argues that because the allegations here all concern how it handled plaintiff's claim, the suit is subject to the policy limitation period under applicable law. We agree.

We begin with the observation that, as our Supreme Court has put it, there, in the context of the issue of accrual: "[t]hat a cause of action is labeled a UCL claim is not dispositive; instead, 'the nature of the right sued upon' [citation] and the circumstances [underlying] its invocation control . . . ." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1196.) Or, as the court put it a few pages later, we "look not to the claim's label as a UCL claim but to the nature of the obligation allegedly breached." (*Id.*, at p. 1200.)

The alleged acts that form the basis of plaintiff's UCL claim occurred during the claim handling process, including, for example, State Farm's alleged failure "to investigate all claims made in good faith and reasonable manner," its purportedly faulty "claims adjudication process," and its decision to deny coverage in purported violation of the policy. In plaintiff's own allegation, the new claim is on "State Farm's claims adjudication process." In short, the crux, the gravamen, of plaintiff's claim arises out of the contractual relationship. It is within the one-year limitation provision.

*Jang, supra*, 80 Cal.App.4th 1291, involved litigation arising from fire damage to a building and a resulting insurance settlement in arbitration between the insurer and the insureds, the Stoniches. A mortgage holder that had foreclosed on the property, which was a loss payee under the original property owner's policy, cross-complained against the insurer, alleging civil conspiracy and bad faith in the manner in which the arbitration settlement

was reached.  The trial court granted summary judgment for the insurer, finding that the cross-action was an action on the policy and therefore time-barred by the one-year limitation period in the policy.  The mortgage holder appealed.

We affirmed.  Doing so, we discussed at length numerous cases, including many of those cited by the parties here, after all of which we made our "analysis" and our conclusion, as follows:

"Here, appellant's cross-complaint includes causes of action for civil conspiracy and insurance bad faith based on respondent's participation in the June 10, 1996 arbitration agreement. . . .  [¶]  The bad faith claim alleged respondent 'was aware that the Stoniches were not entitled to any sum from the insurance proceeds because of other loss payees under the insurance policy[,] yet [respondent] with the purpose of minimizing its costs agreed to and did proceed to arbitration solely with the Stoniches in violation of [respondent's] duty of good faith and fair dealing with regard to the insurance policy and the loss payees who were express beneficiaries of the contract as additional insureds.  [Respondent] thereby deprived said insured of benefits pursuant to the policy without proper cause and derogated [appellant's] rights under the policy.'

"Our review of the allegations of appellant's cross-complaint reveals that the crux of her action is her claim that the arbitration agreement was structured so that she was denied payment of insurance proceeds allegedly due to her under the policy.  Because the cross-complaint sought damages recoverable under the policy for a risk insured under the policy, we agree with the trial court that the cross-complaint is an action under the policy." (*Jang*, *supra*, 80 Cal.App.4th at pp. 1302–1303.)

16

*Lawrence v. Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 (*Lawrence*) involved Lawrence's claims under an all-risk policy for losses resulting from subsidence, and also for bad faith consisting of misrepresentations concerning the scope of coverage. (*Lawrence*, at pp. 573–574.) The Court of Appeal affirmed the summary judgment for the insurer on the basis that the claim was "fundamentally a claim on the policy" and thus subject to the policy limitations provision (*id.*, at p. 575), concluding as follows: "Finally, the one-year commencement of suit provision also precludes Lawrence from recovery on the cause of action for alleged tortious bad faith in handling his claim because of purported misrepresentations in the policy concerning coverage. Claims arising out of the contractual relationship are subject to the contractual limitations period contained in the insurance policy." (*Id.*, at pp. 574–575.)

*Sullivan*, *supra*, 964 F.Supp. 1407, involved claims for breach of policy, bad faith, and infliction of emotional distress. The court held that the claim was one on the policy, which included actions "grounded upon a failure to pay policy benefits." And the court added, "one-year limitations provisions have been broadly applied to both contract and tort actions, including claims based on allegations relating to the handling of a claim or the manner in which it was investigated, adjusted, or processed." (*Id.*, at pp. 1414–1415, citing *Velasquez*, *supra*, 1 Cal.App.4th at p. 721.)

And as *Velasquez* itself noted, after surveying California law, "where [a] bad faith action is based on allegations relating to the handling of a claim or the manner in which it is processed, it is an action 'on the policy' and, therefore, subject to the limitations bar." (*Velasquez*, *supra*, 1 Cal.App.4th at p. 719.)

17

*Abari v. State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 (*Abari*) involved a complaint alleging nine causes of action:  for breach of the policy, bad faith, and seven other claims.[5]  Affirming summary judgment for the insurer, Presiding Justice Klein held that the "unfair practices claims" were "a transparent attempt to recover on the policy."  (*Abari, supra,* 205 Cal.App.3d at p. 536.)

*Keller v. Federal Insurance Co.* (C.D.Cal., Feb. 13, 2017, No. CV 16-3946-GW(PJWx)) 2017 U.S. Dist. LEXIS 20820, granted summary judgment for the insurer, holding that all seven of the insured's claims were time-barred by the one-year limitations provision:  "The remaining causes of action consist of tortious breach of the covenant of good faith and fair dealing; tortious interference with insurance contract; violation of California Business & Professions Code section 17200; negligence; and declaratory relief. [Citation.]  As Defendants point out, all of these causes of action are based on allegations that Defendants acted in bad faith in breaching the contract by refusing to provide coverage.  [Citation.] . . ."  (*Keller v. Federal Insurance Co., supra,* 2017 U.S. Dist. LEXIS 20820 at *40.)

Finally, there is *Enger v. Allstate Ins. Co.* (N.D.Cal., Apr. 5, 2016, No. 16-cv-00136-JSW) 2016 U.S. Dist. LEXIS 199888, where the insured alleged unfair business practices against the insurer and sought injunctive relief. Judge White granted the insurer's motion to dismiss, holding that "The suit limitation period applies to all of plaintiff's causes of action, including her claims for breach of contract, breach of implied covenant/bad faith, unfair

---

[5] The other claims were for breach of fiduciary duty, intentional and negligent misrepresentation, constructive fraud, conspiracy, and tortious interference with, and inducement to breach, contract.

business practices, injunctive relief, and, to the extent pled, declaratory relief."[6]

As mentioned above, plaintiff's brief cites without discussion five cases. None helps her. *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912 and *North Star Reinsurance Corp. v. Superior Court* (1992) 10 Cal.App.4th 1815 did not involve fire insurance policies with their one-year limitation provisions. *Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th 1185 did not involve an insurance policy at all. And *Keller* and *Enger* are discussed above—and hardly support plaintiff.

And as to *20th Century*, the one case plaintiff cites that involves insurance and does not apply the one-year limitation provision, it is easily distinguishable. That case involved a claim arising out of the Northridge earthquake, and included a claim that the insurance adjuster misrepresented to the insured that there was no earthquake damage. On the one hand, it involved Code of Civil Procedure section 340.9, a limitation provision that was enacted to revive insurance claims for damages arising out of that earthquake. (*20th Century*, *supra*, 90 Cal.App.4th at p. 1279.) And to the extent the case held that the fraud claim was not within the limitation provision, plaintiff has no fraud claim here.

In sum, the crux of plaintiff's claim (*Jang*, *supra*, 80 Cal.App.4th at p. 1303) is "grounded upon a failure to pay policy benefits." (*Sullivan*, *supra*, 964 F.Supp. at p. 1414.) That claim necessarily arises "out of the contractual relationship." (*Lawrence*, *supra*, 204 Cal.App.3d at p. 575.)

---

[6] Unpublished federal opinions are citable. (See *Haligowski v. Superior Court* (2011) 200 Cal.App.4th 983, 990, fn. 4; *Pacific Shore Funding, v. Lozo* (2006) 138 Cal.App.4th 1342, 1352, fn. 6.)

As plaintiff's own brief admits, "There is no doubt that an insured cannot plead around the one-year limitations provision by labeling her cause of action something different than breach of contract" which, of course, includes claims for bad faith. (*Velasquez, supra*, 1 Cal.App.4th at p. 722.) And as quoted above, plaintiff's allegations include that "Under California law, State Farm is to give at least as much consideration to the interests of its insureds as it gives to its own interests when adjudicating a claim"; that "State Farm does not accept this legal obligation [and] [w]ithout a Court order specifically requiring State Farm to comply with this standard, State Farm will continue to violate its legal obligations to its insureds"; and that "[d]rafting such an order is straightforward. An example would be: 'State Farm is ordered, when adjudicating any property insurance claim presented to it, to give at least as much consideration to the interests of its insured as to its own interests.' "

This hardly merits injunctive relief. It is good old-fashioned bad faith law, already on the books—law well known to State Farm. Specifically:

- The implied covenant of good faith and fair dealing requires the insurer "to give at least as much consideration" to the interests of the insured as it gives its own. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818–819.)

- "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658.)

- "[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the

20

policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.' " (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1209.)

- " '[T]he covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive. . . .' [A]n insured plaintiff need only show, for example, that the insurer unreasonably refused to pay benefits. . . ." (*Bosetti v. United States Life Ins. Co. in the City of New York* (2009) 175 Cal.App.4th 1208, 1236, internal citations omitted.)

- "[I]f the insurer denies benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the full array of tort remedies, including possible punitive damages." (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1073.)

Finally on this issue, we find support for our conclusion in the substantive UCL law, which, plaintiff's express statements to the contrary notwithstanding, demonstrate that plaintiff is seeking—indeed, *must* be seeking—policy benefits.

Plaintiff purports to disclaim seeking policy benefits per se, as noted, expressly alleging it is "not likely" she will benefit (though she may, as she retains her State Farm policy.) In short, plaintiff alleges she may recover something, she may not. At oral argument, Mr. Rosenberg-Wohl went much further, at one point representing that his "case does not depend on whether I win"; or, as he later put it, when asked if this case would be affected if the Ninth Circuit affirmed the adverse holding against plaintiff, he answered "no, because the UCL claim has nothing to do with winning or losing." This is very wrong. Winning does matter. It is crucial. And if plaintiff does not win, no UCL claim could succeed.

21

Business and Professions Code section 17204 provides that for an individual to pursue a UCL claim, he or she must prove they "suffered injury in fact and has lost money or property as a result of the unfair competition." The standing requirement is intended to preserve standing for those who had had "business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321 (*Kwikset*).) Thus, to have standing, plaintiff must establish that she has personally "lost money or property," that she has some form of economic injury—that she has "personally suffered . . . harm." (*Kwikset*, *supra*, 51 Cal.4th at p. 323; see generally *Hall v. Time, Inc.* (2008) 158 Cal.App.4th 847, 854–855.) Put bluntly, plaintiff must prove "policy benefits."

**State Farm Did Not Waive the Limitation Provision**

Plaintiff's other argument is that State Farm waived the limitations period by reopening her claim in response to her husband's follow-up inquiry. Judge Massullo rejected the argument. So do we, for reasons both legal and factual.

*Prudential*, *supra*, 51 Cal.3d 674, is dispositive. There, in the context of a discussion of cases involving waiver and estoppel, the Supreme Court quoted Witkin on estoppel cases, which "roughly fall into three classes." Then, after quoting the classes, the Supreme Court went on with examples: "For example, if the insurer expressly extends the one-year suit provision during its claim investigation, the insurer waives its right to raise a timeliness defense to the insured's action." Adding footnote 5. And footnote 5 said this:

"As amicus curiae observe, similar conduct by the insurer after the limitation period has run—such as failing to cite the limitation provision

22

when it denies the claim, failing to advise the insured of the existence of the limitation provision, or failing to specifically plead the time bar as a defense—cannot, as a matter of law, amount to a waiver or estoppel." (*Prudential*, at p. 690, fn. 5.)

Plaintiff asserts that *Prudential* "inadvertently introduced confusion into the law," that the Supreme Court's language "cannot possibly have been what the court intended," and devotes many pages in her brief to a discussion of how *Prudential* does not mean what it says, very much as she did below. As plaintiff puts it at one point, *Prudential* concerned only the " 'claims' waiver law of the State of California, not 'ordinary' waiver law"—whatever that means. In all events, the Supreme Court said what it said, in light of which it is perhaps enough to say that this ends the discussion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 457.

But beyond that, as State Farm puts it, plaintiff "runs head first into decades of contrary case law" applying *Prudential*, going on to cite, for example, "*CBS Broadcasting Inc. v. Fireman's Fund Ins. Co.* (1999) 70 Cal.App.4th 1075, 1085 ['CBS cannot escape the effect of the limitations provisions by relying on Fireman's actions occurring months after the claim was barred']; *Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 144, fn. 1 ['[A] carrier's representation, e.g., that it will "reopen" a file, which is made after the one year period has expired, will not result in a waiver or estoppel']; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 ['Because all of Love's rights under the policy had already lapsed, the Loves' resubmission of the claim does not entitle them to recover damages']." As *Singh v. Allstate Ins. Co.* put it, "As the *Prudential-LMI* court noted, '[i]t is settled law that a waiver exists whenever an insurer intentionally relinquishes its right to rely on the limitations provision[,] [¶] [w]ith the exception of conduct or

23

representations made after the contractual limitation period has run." (*Singh v. Allstate Ins. Co.*, *supra*, 63 Cal.App.4th at p. 144 & fn. 2.)

Were all that not enough, in his leading California commentary, the late Justice Croskey had this point-blank statement of the law: "No estoppel based on conduct after time limit has run: '[C]onduct by the insurer after the limitation period has run . . . cannot, as a matter of law, amount to a waiver or estoppel.'" (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 12:1126.10, citing among other cases *Prudential*.)

But even if plaintiff could show that State Farm could waive the provision, her showing would fail as a matter of proof.

Plaintiff argues State Farm waived their contractual limitations period by "reopening" her claim nearly one year after State Farm had originally denied the claim. More specifically, plaintiff alleges that in response to her husband's "follow-up inquiry" to see "what, if anything, could be done." Claim Specialist Lee left a voicemail that State Farm had "reopened" her claim, and that she was "available to address and possibly resolve any questions plaintiff had about the coverage before plaintiff might want to 'move forward with the next step.'" In sum, plaintiff alleges State Farm waived its limitation defense by using words like "reopened," "for some reason," and "next step." It is manifestly insufficient.

To establish waiver, plaintiff must show State Farm "intentionally relinquish[ed] its right to rely on the limitations provision." (*Prudential*, *supra*, 51 Cal.3d at p. 689.) And "'[t]he burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver." [Citation.]'" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th

1, 31, citing *City of Ukiah v. Fones* (1962) 64 Cal.2d 104, 107–108.) Plaintiff's showing does not measure up.

To begin with, the policy requires any waiver to be in writing. Plaintiff does not allege State Farm agreed to waive anything in writing.[7]

Second, to the extent plaintiff argues waiver was implied by use of words like "reopened," "for some reason," and "next step," she cites no authority to support the proposition that using such terms magically waives a limitations defense. Indeed, courts have held the exact opposite, that reopening a denied claim does not waive a limitations defense. (See *Gordon v. Deloitte & Touche, LLP Group Long Term Disability Plan* (9th Cir. 2014) 749 F.3d 746, 752 [insurer's reopening of claim did not constitute waiver, "[e]ven if waiver were possible after the limitation period has run"].)

### DISPOSITION

The judgment is affirmed. State Farm shall recover its costs on appeal.

---

[7] Plaintiff's opening brief states that State Farm "expressly" waived the limitation provision. State Farm called plaintiff on this, stating that her opening brief "misrepresented the facts." Plaintiff's reply brief asserts, indeed with its own argument heading, that "plaintiff has alleged that State Farm's waiver was in writing," citing to CT 27-28. CT 27–28 is in the amended complaint, not the operative SAC. More fundamentally, one looks at CT 27–28 in vain for any allegation of "in writing."

_____

Richman, J.

I concur:

_____

Miller, J.

*Rosenberg-Wohl v. State Farm Fire and Casualty Company*
(A163848)

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court; |
| Trial Judge: | Honorable Anne-Christine Massullo; |
| Attorney for Plaintiff and Appellant, Katherine Rosenberg-Wohl: | Hershenson Rosenberg-Wohl, David Rosenberg-Wohl; |
| Attorney for Defendant and Respondent, State Farm Fire and Casualty Company: | DTO Law, Lauren Hudecki, Megan O'Neill. |

STEWART, P.J., Dissenting

I agree with the majority that State Farm did not waive its statute of limitations defense. I respectfully dissent, however, from its conclusion that plaintiff's cause of action for unfair business practices under the UCL is subject to the one-year contractual limitations period.

In assessing this question, moreover, I would not reach out to address issues that are not before us, such as whether the plaintiff has stated a claim on the merits, has standing to pursue it or is likely to prevail on her federal court breach of contract action. The sole ground on which State Farm demurred to the second amended complaint was that it is time-barred. It did not demur on the ground that the UCL claim, as alleged, fails to state a cause of action on the merits. Nor did it assert that plaintiff lacks standing to pursue it. The majority expresses doubt about all these issues; I would refrain. The sole question is whether plaintiff's UCL claim for injunctive relief is an action "on" the insurance policy, and thus governed by the one-year limitations period specified in the policy and mandated by Insurance Code section 2071.[8]

For the reasons I will explain, it is not.

_____

[8] The parties agree that the language of the one-year limitations provision in plaintiff's homeowner policy applies only to actions "on the policy," because the policy is governed by Insurance Code section 2071, which mandates the terms of first-party fire insurance coverage and requires inclusion of a one-year limitations period for any "suit or action *on this policy for the recovery of any claim*." (Ins. Code, § 2071, subd. (a), italics added; see also *State Farm Fire & Casualty Co. v. Superior Court* (1989) 210 Cal.App.3d 604, 610 [construing identical language in homeowner's policy, and concluding that "[c]learly 'no action shall be brought' must mean no action *on the policy*"].)

1

# I.

"At the demurrer stage, [the plaintiff] is the master of his complaint, and we must accept his allegations at face value." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1202.) We must assess the complaint's timeliness based on the legal theory of recovery the plaintiff *has alleged*, not based on a theory the plaintiff *might have* alleged. (See *id*. at p. 1201.) So that is where I begin, mindful that whether the plaintiff's allegations "are actionable as an unfair business practice under the UCL is not before us at this stage." (*Ibid.*)

In this case, plaintiff alleges that State Farm offers various types of property insurance coverage to Californians, advertises itself as the largest homeowner's insurance company in the country and has the largest market share of homeowners' policies in California. She alleges that her policy is designated by State Farm as an "all risk" policy, which means it covers all perils unless they are specifically excluded. She alleges State Farm summarily denied the claim she made under her homeowner's policy without any investigation and with virtually no explanation, thus depriving her of the opportunity to question or challenge its denial of coverage or to provide additional information that might affect its determination.

In addition, she alleges that State Farm's advertising stating that it is "like a good neighbor" and is "here to protect your home and your valuables," creates an impression in consumers that, on submission of a claim, it would investigate the claim and provide an explanation if it denies the claim. However, she alleges, because State Farm does not do either of those things, consumers are misled. Further, she alleges, State Farm has a practice of summarily denying property insurance claims unless it concludes at the

2

outset that the claim is likely covered, and denies most claims without investigating them or explaining the basis for its denial. She alleges these practices are intended to discourage policyholders from challenging State Farm's coverage decisions. Finally, she alleges State Farm's misleading advertising and failures to investigate property insurance claims, to specify the reasons for denying coverage and to "give[] at least as much consideration to the interests of its insured as it gives to its own interests" constitute false advertising and unfair business practices under the UCL.

As a remedy, she seeks declaratory and injunctive relief on behalf of the public, requiring State Farm to investigate property insurance claims and provide policyholders an explanation of its reasons when it denies coverage. She alleges affirmatively that she is not seeking damages for the denial of her own claim, which is the subject of a separate breach of contract suit she filed against State Farm that is pending in federal court.

Those are her allegations. The question, then, is whether this UCL claim for injunctive relief is a cause of action "on" her insurance policy.

## II.

No California authority addresses this question.

I agree with my colleagues that in resolving this issue, we must assess the substance of plaintiff's claim and not its label. As this court previously explained in *Jang v. State Farm Fire & Casualty Co.* (2000) 80 Cal.App.4th 1291 (*Jang*), "an action seeking damages recoverable under the policy for a risk insured under the policy is merely a 'transparent attempt to recover *on the policy*'" and "[a]s such, it is subject to the policy's statute of limitations." (*Id.* at p. 1301.) Putting it another way, we recognized that where "the crux" of a lawsuit is a claim the insured was wrongfully denied payment of

3

insurance proceeds, it is a claim on the policy no matter how pled. (*Id*. at p. 1303.)

Where I part ways with the majority is on its conclusion that plaintiff's UCL claim is " 'grounded upon a failure to pay policy benefits' " (Maj. opn. *ante,* at p. 19), and that what she is seeking to recover in this case is (and "*must* be") policy benefits (*id*. *ante*, at p. 21).

To begin, the optics of this case provide a tempting basis to mistake this UCL claim for something that it is not. For whatever reason, plaintiff has filed two separate lawsuits against State Farm based on some of the same allegations, one now pending in federal court that seeks damages for breach of contract and bad faith. But her separate federal lawsuit is an irrelevant distraction. The fact that she has asserted multiple causes of action based on some of the same underlying facts does not mean they necessarily are governed by the same limitations period. "[A] plaintiff is generally permitted to allege different causes of action—with different statutes of limitations—upon the same underlying facts." (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 605.) A plaintiff "may allege facts involving several distinct types of harm governed by different statutory periods and, where it does so, one cause of action may survive even if another cause of action with a shorter limitations period is barred." (*Ibid*.) In that situation, a court's task is to determine the statute of limitations applicable to each separate cause of action. (*Id*. at p. 606.) So, here, we must focus only on the "distinct type[] of harm" plaintiff alleges by way of her UCL cause of action, uninfluenced by her separate action seeking damages for the supposed wrongful denial of her insurance claim.

The Legislature has directed that the UCL's remedies are "cumulative . . . to the remedies . . . available under all other laws of this

4

state" (Bus. & Prof. Code § 17205), and that " *'[a]ny* action to enforce *any* cause of action under [the UCL] shall be commenced within four years after the cause of action accrued.' " (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178-179 (*Cortez*); Bus. & Prof. Code § 17208.) Our high court has held that this four-year limitations period "admits of no exceptions." (*Cortez*, at pp. 178-179.) "*Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section" even if the predicate law on which the practice is claimed to be unfair contains a shorter limitations period. (*Cortez*, at pp. 178-179.) This means that, whatever the limitations period may be for an action "on" the insurance policy, whether mandated by contract or by operation of Insurance Code section 2071, a claim brought under the UCL is distinct, and it is governed by the UCL's four-year limitations period. (Cf. *Cortez*, at p. 179 [limitations periods applicable to statutory or contractual claims held inapplicable to UCL claim based on failure to pay wages].)

Furthermore, in treating plaintiff's UCL injunctive relief claim as an action "on" her insurance policy, the majority fails to grapple with the reasoning of the only analogous California case that has been brought to our attention, *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247 (*20th Century*). At issue there was a statute reviving " 'any insurance claim for damages *arising out of* the Northridge earthquake' " that was otherwise time-barred. (*Id.* at p. 1279; Code Civ. Proc., § 340.9). Recognizing that the Legislature's intent was to revive claims that would otherwise be barred by insurance policies containing the one-year limitations period set by Insurance Code section 2071, the Second District, in a unanimous opinion written by Justice Croskey, acknowledged the case law (much of which the majority relies on here) applying that one-year limitations period to claims for breach

5

of the covenant of good faith and fair dealing.  (*See 20th Century,* at p. 1280 [citing *Jang*, *Velasquez v. Truck Ins. Exchange* (1991) 1 Cal.App.4th 712 (*Velasquez*), *Abari v. State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 (*Abari*) and *Lawrence v. Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 (*Lawrence*)].)  Although "bad faith claims that are *seeking damages recoverable under the* policy" were held to be actions on the policy (*20th Century,* at p. 1280), *20th Century* reached the opposite conclusion for a fraud claim alleging the insurer had knowingly mishandled and improperly denied many insurance claims, including the plaintiff's.  (*Id.* at pp. 1256, 1280.)

I quote at some length its reasons for concluding the fraud claim was not an action the policy:  "Her action for fraud does not rest on 20th Century's failure to perform under the policy, but rather on its alleged acts of deceit and deception that go well beyond simple nonperformance.  That the purpose of such alleged fraudulent behavior may have been to evade performance under the policy does not alter the conclusion that an entirely separate act of misconduct has been alleged.  In addition, [plaintiff] does not seek damages recoverable under the policy, but rather damages arising from 20th Century's alleged misrepresentations and [plaintiff's] reliance, including such things as out of pocket premium expense, lost opportunity damages and recovery for resulting emotional distress.  For these reasons, we do not perceive [plaintiff's] fraud claim as an '*insurance claim for damages*' as that term is used in section 340.9."  (*20th Century, supra,* 90 Cal.App.4th at pp. 1280-1281.)

I find *20th Century*'s analysis on point and persuasive and would apply it here.  The "crux" of plaintiff's lawsuit (*Jang*, *supra*, 80 Cal.App.4th at p. 1303) is that State Farm is marketing homeowner's insurance to the public, promising benefits on defined terms, while its claims adjustment

6

process is, by design, so superficial (little to no investigation) and obscure (no communication with insureds about the basis for denials) that it manages to avoid paying out on all but the claims that are obviously covered. Plaintiff seeks only an injunction to rectify those practices on a prospective basis, generally applicable to State Farm's dealings with all its customers and not limited to her individually. She does not seek damages at all, much less damages recoverable under the policy. That UCL claim is not a claim based on the insurance policy itself and does not even depend on whether plaintiff's stairway repairs ultimately fall within policy coverage. As a policyholder, plaintiff seeks merely to vindicate the consumer public's interest in transparency and fair practices, so that no State Farm insured will have to go to extraordinary lengths just to ascertain and resolve whether coverage exists for a particular loss. This lawsuit is not a disguised attempted to recover (or even litigate) any policy benefits. It seeks only to compel State Farm to reform the way it conducts business with its customers.[9]

---

[9] As I have noted, I would refrain from prejudging the legal viability of plaintiff's UCL claim. The majority's foray into the merits of this UCL claim is both irrelevant and unwise, including because the issue is complicated, and it is by no means clear the claim is not legally viable. "[C]ommon law [insurance] bad faith claims provide a viable basis for a UCL action." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 381; see, e.g., *Shusha, Inc. v. Century-National Insurance Company* (2022) 87 Cal.App.5th 250, 267 [allegations insurer summarily denied insurance claim adequately alleged causes of action for bad faith and violation of UCL], review granted Apr. 19, 2023, S278614; *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 542 [failing to attach applications to or endorse them on disability policies when issued and later holding insureds to statements in those unattached and unendorsed applications as grounds for voiding or rescinding the policies]; *Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 283-287 [insurer's deceptive practice of asserting right to full recovery from third-party tortfeasors regardless whether it was

7

This case in no way resembles the decisions on which the majority relies, in which one-year limitations provisions were held applicable to various types of claims brought against insurers. None of the California decisions involved UCL claims. All involved claims based on refusal to pay policy benefits that were simply repackaged as tort claims while still seeking policy benefits as damages. (See *Jang, supra,* 80 Cal.App.4th at p. 1303 [civil conspiracy and bad faith claims held on the policy "[b]ecause [they] sought damages recoverable under the policy for a risk insured under the policy"]; *CBS Broadcasting Inc. v. Fireman's Fund Insurance Co.* (1999) 70 Cal.App.4th 1075, 1086 [bad faith claim alleging insurer refused to pay benefits due under the policy]; *Velasquez, supra,* 1 Cal.App.4th at p. 722 [bad faith claims held time-barred because "'[a]mong the damages sought . . . are the policy benefits plus interest, revealing that their action . . . is an 'attempt to recover on the policy' "]; *Prieto v. State Farm Fire & Casualty Co.* (1990) 225 Cal.App.3d 1188, 1190, 1191-1192, 1196 [claim for breach of implied covenant of good faith and fair dealing alleging insurer refuses to pay policy benefits and claim for intentional infliction of emotional distress that "is merely a theoretical restatement of the same claim," held governed by one-year limitations period of Insurance Code section 2071]; *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1063 [claims for insurance bad faith, breach of fiduciary duty and breach of unspecified statutory duties held claims on the policy because "the essence of

_____

entitled to any or only partial recovery]; *Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 965-966 [encouraging insureds to purchase life insurance policies with less favorable policies]; *Notrica v. State Comp. Ins. Fund* (1999) 70 Cal.App.4th 911, 944-945 [UCL claim against workers' compensation insurance provider based on denying insured access to claims files and refusing to communicate with insured's representatives].)

those claims is an attempt to recover '[d]amages for failure to provide benefits under [the] subject contract of insurance' "]; *Abari, supra,* 205 Cal.App.3d at p. 536 [bad faith and other non-statutory claims held "a transparent attempt to recover *on the policy*" because they alleged damages in amount of policy benefits][10]; *Lawrence, supra,* 204 Cal.App.3d at p. 575 [claim for tortious bad faith denial of insurance claim held a claim on the policy because it "relates to the complete denial of the claim on the underlying policy"][11]; see also *Sullivan v. Allstate Ins. Co.* (C.D.Cal. 1997) 964 F.Supp. 1407, 1415 [tort claims alleging damages based on non-payment of policy benefits held "on the policy"].) Those cases involved an insurer's "breach of a primary obligation to pay policy benefits," and thus the failure to pay was the lawsuit's "very reason for being." (*Prieto,* at p. 1195.)

Here, by contrast, the scope of insurance coverage is irrelevant. The plaintiff is not suing State Farm in this case because she contends it wrongfully denied policy benefits to her, and she does not seek any monetary recovery to compensate her for State Farm's refusal to pay on a covered loss. Like the fraud claim in *20th Century,* this is not an action "on the policy." There is *no* California authority to the contrary.[12]

---

[10] *Abari* described some of the claims as "unfair practices counts" (*Abari, supra,* 205 Cal.App.3d at p. 536) but that was just a short-hand descriptor, and, as the majority acknowledges (Maj. opn. *ante,* at p. 18), none were UCL claims. (See *Abari,* at p. 533).

[11] *Lawrence* did not specify the remedy sought for the policyholder's bad faith claim, but it is evident from context the insured sought damages for wrongful denial of his claim. (See also *Velasquez, supra,* 1 Cal.App.4th at p. 722 [citing *Lawrence* for proposition that "a bad faith action based on denial of a claim in the underlying policy is an action on the policy"].)

[12] Unpublished federal authority involving the UCL that the majority also cites is neither persuasive nor on point. (See *Enger v. Allstate Insurance*

9

That conclusion is reinforced by the UCL's unique scope and purpose. A UCL action "is not an all-purpose substitute for a tort or contract action." (*Cortez, supra,* 23 Cal.4th at p. 173.) "The statute's 'purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' " (*Abbott Laboratories v. Superior Court of Orange County* (2020) 9 Cal.5th 642, 651.) Compensatory damages are not recoverable, only restitution (which is not sought in this case) and injunctive relief. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179; *Cortez*, at pp. 173-174; Bus. & Prof. Code, § 17203; see also Civ. Code, § 3281 [defining "damages"].) Indeed, the purpose of an injunction under the UCL is not to " 'resolve[] a private dispute' between the parties" or " 'rectif[y] individual wrongs' " but to protect the public. (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 955.) Such an injunction " 'is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff' " (*ibid.*) and is " 'the primary form of relief available under the UCL to protect consumers from unfair business practices.' " (*Id*. at p. 959.) Put simply, "[a] UCL claim does not duplicate the contract and tort causes of action involved in bad faith litigation, where damages are central." (*Zhang v. Superior Court, supra,* 57 Cal.4th at p. 382.)

*Company* (N.D.Cal., Apr. 5, 2016, No. 16-cv-00136-JSW) 2016 WL 10829363, at pp. *1, *5-*6 [UCL claim seeking unspecified remedy that is "based on [insurer's] alleged failure to pay what is owed . . . under the terms of the Policy" held untimely under one-year limitations period; *Keller v. Federal Insurance Company* (C.D.Cal., Feb. 13, 2017, No. CV 16-3946-GW(PJWx)) 2017 WL 603181, at p. *15 [because claim for breach of contract based on denial of policy benefits is time-barred, remaining UCL claim based on allegations insurer acted in bad faith in breaching the contract by refusing to provide coverage must be dismissed because "there appears to be no basis for [it]"].)

10

For example, actions brought under the UCL to enjoin unfair business practices are not actions "on *a contract*" as that term is understood in the attorney fee context (Civ. Code, § 1717, italics added), even when such actions involve a contract. (See *Shadoan v. World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, 107-108 [Civil Code § 1717 held inapplicable to action under UCL to enjoin lender's allegedly unfair business practice of including prepayment penalty in standard loan agreement]; accord, *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1179-1181 [action challenging lender's practice of charging property inspection fees to defaulting borrowers].) There is no reason to conclude such an action nonetheless is an action "on the *policy*" which, in the insurance context, is the same thing. On the contrary, the analogy to caselaw construing Civil Code section 1717 is particularly apt, because both standards are statutory. (See Ins. Code, § 2071, subd. (a).)

The majority posits this claim is nothing more than "good old-fashioned bad faith law, already on the books." (Maj. opn. *ante*, at p. 20.) I disagree. Liberally construing her complaint, Plaintiff alleges on information and belief that the claims adjudication practices that *she* personally endured are a routine business practice, to which "thousands" of State Farm policyholders across California are subjected. She seeks a remedy designed solely to benefit the public, to rectify those business practices on a prospective basis. Like the bad faith claim in *20th Century*, this claim "does not rest on [State Farm's] failure to perform under the policy, but rather on its alleged acts . . . that go well beyond simple nonperformance" and "does not seek damages recoverable under the policy." (*20th Century, supra*, at pp. 1280-1281.)

Nor do I agree with the majority that a contrary conclusion is compelled by the standing requirements of the UCL, which require proof of

11

economic injury as a condition of bringing suit (see generally *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 (*Kwikset*); Bus. & Prof. Code, § 17204). To establish standing, the majority asserts, "plaintiff must prove 'policy benefits,'" and so this must be an action "on the policy." (Maj. opn. *ante*, at p. 22.)  I do not see it that way.

First, it is by no means clear that plaintiff lacks standing.  State Farm did not demur on that basis, and plaintiff was given no opportunity to amend her complaint to try to allege a cognizable economic injury.  It is certainly possible for a policyholder pursuing a UCL claim such as this one to allege economic injury that does not involve wrongfully denied policy benefits. Being deprived of money or property that one is legally entitled to is not the only way for a plaintiff to assert UCL standing.  (See *Kwikset*, *supra*, 51 Cal.4th at p. 323.)  There are "innumerable ways" to do so.  (*Ibid*.)  For example, a policyholder pursuing a UCL claim such as this would likely have standing if they had to spend money to *hire an attorney* for help understanding and assessing State Farm's opaque claims denial.  (See *Kwikset*, at p. 323 [being required to "enter into a transaction, costing money or property, that would otherwise have been unnecessary" confers UCL standing].)  So too would a policyholder if State Farm *raised their insurance premium* as a result of the policyholder trying to understand or question State Farm's decision to summarily deny coverage on a claim without investigation or explanation.  (See, e.g., *Monarch Plumbing Co., Inc. v. Ranger Ins. Co.* (E.D.Cal., Sept. 25, 2006, No. CIV. S-06-1357 WBS KJM) 2006 WL 2734391, at p. *6 [higher insurance premiums held economic injury sufficient to confer UCL standing].)

Above all, however, the point of the UCL cause of action plaintiff asserts is not to seek redress for the injury occasioned by State Farm's

12

ultimate decision to deny coverage for plaintiff's loss. The majority cites nothing in California caselaw that allows us to evaluate the gravamen of the plaintiff's UCL cause of action based on whether the plaintiff lacks standing to assert it.

Finally, I also find persuasive the reasoning of the Connecticut Supreme Court in *Lees v. Middlesex Ins. Co.* (1991) 219 Conn. 644 [594 A.2d 952] (*Lees*), which held that an unfair practices claim under Connecticut's statutory counterpart to the UCL was *not* an action on an insurance policy and thus not subject to a one-year limitations provision identical to the one at issue here. The *Lee* court explained:

"[T]hat phrase ["on the policy"] and those [statutory] claims ordinarily involve different factual inquiries, and because the duties ordinarily associated with them derive from different sources. In an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so. The factual inquiry focuses on the nature of the loss, the coverage of the policy and whether the parties have complied with all of the terms of the policy. In a [statutory unfair practices] claim, however, the insurer's liability is ordinarily based on its conduct in settling or failing to settle the insured's claim and on its claims settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurance contract, but on the conduct of the insurer. Furthermore, in an action 'on [the] policy,' the insurer's duty to comply with the policy provisions stems from the private insurance agreement and is contractual in nature. In a [statutory unfair practices] claim, the insurer's duty stems not from the private insurance agreement but from a duty imposed by statute." (*Lees, supra,* 594 A.2d at p. 956.)

13

*Lees* specifically rejected the argument that such claims are a pretextual attempt to recover policy proceeds under the line of California authority just discussed, as "inconsistent with the recognition of [the statutory unfair practices] claims as independent actions based on factual inquiries and sources of duty separate from actions on the policy." (*Lees, supra,* 594 A.2d at p. 958 & fn. 11.) In effect, *Lees* declined to extend the reasoning of that caselaw to a statutory claim for unfair business practices.

I agree. This lawsuit seeks nothing but public injunctive relief to reform the way an insurance company conducts business with its policyholders, premised not on any contractual rights belonging to any insured under their policy of insurance but on a statutory remedy for "unfair" business practices under the UCL. It does not seek any remedy intended to vindicate the plaintiff's private, individual rights under her insurance policy. At most, it is an action that *concerns* her insurance policy (and countless others). Regardless of whether there is merit to the claim or State Farm may ultimately prevail on defenses such as lack of statutory standing, it is not a claim "on" the policy. And thus it is not time-barred.

The trial court erred in concluding this cause of action is governed by the policy's one-year limitations clause. It is governed, rather, by the four-year period applicable to causes of action under Business and Professions Code section 17200 (Bus. & Prof. Code, § 17208), pursuant to which it was timely filed.

I therefore dissent.

_____
STEWART, P.J.

14